FIDELITY TRUST COMPANY, Administrator, Respondent, vs. WISCONSIN IRON & WIRE WORKS, Appellant.

*December 7, 1910—March 14, 1911.*

*Master and servant: Warning of danger: Negligence: Contributory negligence: Special verdict: Omissions: Waiver: Presumptions.*

1. Where in a factory a temporary and not very obvious change is made whereby a poisonous liquid flows from a hose in place of water, a reasonably explicit notice of the change should be given to employees who have been accustomed to drink the water from such hose.

2. The ordinary warning or instruction which it is the duty of a master to give to his employee concerning latent dangers in the work is not sufficient in such case.

3. In an action for death of an employee caused by drinking the poisonous liquid, where the negligence charged against the employer was failure to give notice of the change, the question whether the decedent was negligent in failing to investigate before drinking was sufficiently covered in the special verdict by a question relating to contributory negligence, and no separate question concerning assumption of risk was necessary.

4. Where there is a controversy as to whether or not the act or omission charged as negligence of the defendant did in fact occur, the jury should be required, if a special verdict is taken, to determine separately whether such act or omission occurred, and, if it did, whether it occurred in consequence of a lack of ordinary care on the part of defendant.

5. But defendant cannot, in such a case, complain that the only question submitted was whether in such act or omission he was guilty of a want of ordinary care, where he did not request the submission of any other or broader question covering the issue omitted, but in fact proposed a still narrower finding.

6. All controverted matters of fact not covered by the special verdict and not brought to the attention of the trial court by the party against whom the judgment goes, are presumed to have been determined by the court in conformity with the judgment.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE .W. HALSEY, Circuit Judge.  *Affirmed.*

For the appellant there was a brief by *Aarons & Niven,* and oral argument by *C. L. Aarons.*  They cited, among other authorities, *Bourda v. Jones,* 110 Wis. 52, 85 N. W. 671; *Burnham v. Norton,* 100 Wis. 8, 75 N. W. 304; *Klatt v. N. C. Foster L. Co.* 92 Wis. 622, 66 N. W. 791; *Yezick v. Chicago B. Co.* 138 Wis. 342, 120 N. W. 247; *Yunkes v. Racine-Sattley Co.* 135 Wis. 81, 115 N. W. 348; *Rysdorp v. George Pankratz L. Co.* 95 Wis. 622, 70 N. W. 677; *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178; *Maanum v. Madison,* 104 Wis. 272, 80 N. W. 591; *Goetsch v. International H. Co.* 138 Wis. 385, 120 N. W. 281; *Peake v. Superior,* 106 Wis. 403, 82 N. W. 306; *Johnson v. St. Paul & W. C. Co.* 126 Wis. 492, 105 N. W. 1048; *Campshure v. Standard M'fg. Co.* 137 Wis. 155, 118 N. W. 633; *Coman v. Wunderlich,* 122 Wis. 138, 99 N. W. 612; *Rahles v. J. Thompson & Sons Mfg. Co.* 137 Wis. 506, 118 N. W. 350, 119 N. W. 289; *Odegard v. North Wis. L. Co.* 130 Wis. 659, 110 N. W. 809; *Jirachek v. Milwaukee E. R. & L. Co.* 139 Wis. 505, 121 N. W. 326; *Buchman v. Jeffery,* 135 Wis. 448, 115 N. W. 372; *Ryan v. Oshkosh G. L. Co.* 138 Wis. 466, 120 N. W. 264.

*James D. Shaw* and *Oscar W. Kreutzer,* for the respondent, cited, besides other cases, *Rohloff v. Aid Asso.* 130 Wis. 61, 109 N. W. 989; *Steber v. C. & N. W. R. Co.* 139 Wis. 10, 120 N. W. 502; *Brunkow v. Waters,* 131 Wis. 31, 110 N. W.

82; *Horr v. C. W. Howard Co.* 126 Wis. 160, 105 N. W. 668; *Peck v. Baraboo,* 141 Wis. 48, 122 N. W. 740; *Boucher v. Wisconsin Central R. R. Co.* 141 Wis. 160, 123 N. W. 913.

The following opinion was filed January 10, 1911.

TIMLIN, J.   In this case there was evidence tending to show that in one of the basement rooms of defendant's factory, called the plating room, there was near the north wall a tank containing a solution of cyanide of potassium. Immediately south of the center of this tank, pendant from this basement ceiling and extending down a little below the upper rim of the tank, there was an iron pipe connected with the city water supply, carrying a faucet on its lower end, to which was often or usually attached a length of rubber hose which extended southward through part of the room on the floor and had its other and open end raised up to and lying over the edge of and partly into a receptacle located near the center of the room called the scrubbing tank. On the south wall of this basement room was a hot-water tank and there were other tanks in the room. The city water flowed through this pipe into the hose and from the open end of the hose into the scrubbing tank. The employees of defendant, to the knowledge of defendant's superintendent, were accustomed to go into this plating room and drink from the flowing open end of this hose which rested upon said scrubbing tank. On October 21, 1907, shortly after 5 o'clock in the evening, the superintendent of defendant caused the north end of this hose to be detached from the water pipe mentioned and thrust into the solution of cyanide of potassium in the tank containing this liquid. The extension of the hose lay on the floor as usual, leaving the south open end thereof at the scrubbing tank as usual. He did this to syphon the contents of the tank containing the poisonous liquid into the scrubbing tank. The solution of cyanide of potassium thus syphoned over to

the scrubbing tank through the hose theretofore used for city water was not clearly distinguishable from the city water. It had some odor, modified or overcome by other chemical odors in the same room, and it had a slightly yellow tinge, but it was not readily distinguishable from the drinking water that formerly flowed through this hose. Looking from the scrubbing tank the hose extended along the floor northward in its usual direction, ascended near to and a few inches by the water pipe to which it was formerly attached, and then lay over the rim of and into the tank containing the poisonous liquid. The superintendent testifies that he went up to the polishing room where plaintiff's decedent was at work and (quoting from appellant's brief) said substantially as follows:

"Now, Julius, don't go down for wash water tonight, I am running the bronze solution over into the scrubbing tank and if you get some of that it will take the hide off of you."

The plaintiff's decedent slapped his hand on the shoulder of the superintendent and replied:

"Don't tell me about that stuff, Glenister, I have worked in a plating room. He also made the remark that he used to have his fingers all cracked open."

One Hoppe, a fellow workman, also testified substantially to the same effect. There were contradictions and improbabilities tending to show that this testimony might not have been true. But the case might also be disposed of on the hypothesis that this warning was given in the words above quoted. At 5:25 p. m. plaintiff's decedent and Hoppe quit their work for the day in the polishing room on the first floor, and went down the stairs and into the plating room in the basement to get hot water for washing themselves, as was their custom. They went first to the hot-water tank, filled their buckets with hot water, and decedent first went to the scrubbing tank apparently for the purpose of cooling this water

with the city water flowing from the open end of the hose. Acting under the impression that the drinking water was flowing as usual from this end of the hose, he drank of this poisonous liquid which caused his death.

The question arises whether under the circumstances ordinary care required the defendant, under whose authority this insidious and deadly change was made, to give a fairly specific warning to the men accustomed to drink from the open end of the hose. This is not the case of a master instructing his employees concerning the dangers attendant upon work to be done by the latter. What would be a sufficient warning in that case might not be a sufficient warning in a case like this. The warning alleged to have been given in the instant case might have been found to be misleading. It seemed to relate only to washing. Nothing would have been easier than to station a man at the place where the employees usually drank, or to indicate by placard or some similar means that the ordinary healthful beverage had been changed to poison, or to specifically inform the decedent as stated in the first question of the special verdict. There was a special verdict returned by the jury, the first question and answer of which were as follows:

"Was the defendant guilty of a want of ordinary care in failing to inform plaintiff's intestate that a poisonous solution was running through the hose in question? A. Yes."

This was followed by a finding of proximate cause, lack of contributory negligence, and damages, each favorable to the plaintiff. Extended discussion is indulged in relative to whether or not there was any evidence sufficient to negative the testimony of Glenister and Hoppe to the effect that they had warned deceased as quoted. But there was no evidence offered to show that any one on behalf of defendant expressly informed plaintiff's intestate "that a poisonous solution was running through the hose in question." This is the only finding relating to defendant's negligence, and if the judg-

ment cannot be supported on this finding and the inference to be drawn from the judgment a reversal is necessary.

The defendant failed to request the submission of any broader question. It merely requested that the court submit the following, even narrower than the question submitted in that it contained no finding of negligence: "Did the defendant fail to inform plaintiff's intestate that a poisonous solution would be run through the hose on October 21, 1907?" This seems to indicate that counsel on both sides recognized and led the court to believe that a specific warning to this effect was necessary, although there was no evidence that such specific warning was expressly given. The form of the question submitted is faulty and should not ordinarily be used, because in a case where it is contended on the part of the defendant that the act or omission relied on by the plaintiff to constitute negligence never in fact occurred, a question like this might be understood as assuming that the negligent act or omission occurred and that the jury was required to determine only whether or not the defendant was guilty of a want of ordinary care by reason of such act or omission, which the question might be taken to assume had been established. The question should be divided into two, one asking whether the act or omission occurred, and the other asking whether this occurred in consequence of lack of ordinary care on the part of the person accused of negligence. Or the question might be recast into one question in such form that the jury would be more clearly required to pass upon the fact whether or not the act or omission in question occurred, and also whether or not it occurred in consequence of lack of ordinary care. But we do not consider this error in the form of question sufficiently serious to call for reversal in the instant case. The mere fact that there was no evidence that such specific warning was given would not authorize the court to direct a verdict for the plaintiff, because the inference of lack of ordinary care to be drawn from the failure to give such specific

warning was still a question for the jury. The jury would have been authorized to find from the evidence relating to the warning alleged by defendant's witnesses to have been given (1) that the warning was not given at all; (2) that the warning alleged to have been given was so uncertain, vague, ambiguous, and misleading as not to be an adequate warning under the peculiar circumstances here in evidence; (3) that the warning alleged to have been given was given, and, notwithstanding its language, was sufficient to put the decedent upon inquiry and charge him with notice of the change made and the true situation existing in the plating room.

No such questions were requested by the defendant. The only question requested by defendant relating to negligence or lack of negligence on its part was that hereinbefore noticed. The defendant did request the submission of a question relating to the contributory negligence of the plaintiff's decedent; but the court properly covered the same issue by a question in the usual form.

With reference to defendant's negligence the court charged the jury:

"In determining whether or not the defendant exercised due care in respect to giving the deceased a warning, you may consider, if you find that the warning was given, the definiteness or lack of definiteness of such warning, its ambiguity, if any, or freedom from ambiguity, its remoteness or lack of remoteness in point of time from the time of probable contact with such danger, and all the other evidence, facts, and circumstances in the case. . . . The duty to instruct does not go so far as to require the master to acquaint the employee with every possible danger to which he may be subjected in the course of his employment. The master has the right to assume that the servant will see and appreciate those dangers which are open and obvious to a person of ordinary comprehension and will use the knowledge and experience he has gained in the course of his employment."

From all this it seems that the trial was conducted upon the theory that if the warning alleged to have been given, con-

sidering the knowledge of the situation and the experience possessed by decedent, amounted in substance and effect to a notice that the poisonous solution was running or would be run through the hose, the jury might answer the first question in the negative. If this is the meaning of the verdict it rests upon sufficient evidence. Whether this be the meaning of the verdict or not, the defendant failed to request the submission of any other or different question which would bring more clearly before the jury the inquiry whether the warning alleged to have been given was sufficient to charge the decedent with notice of the change made and the true situation existing in the plating room. As the case stands, we must decide that the failure to request such question left it to the court to decide, as the jury might have done, that the warning alleged by defendant's witnesses to have been given, if in fact given, was insufficient for the purpose above stated. Sec. 2858m, Stats. (Laws of 1907, ch. 346); *Smith v. Reed,* 141 Wis. 483, 124 N. W. 489. Hence the verdict of the jury, aided by the presumption created by statute, sufficiently covers all the facts upon which the liability of defendant is predicated. An insufficient warning is in legal effect equivalent to no warning. *McDougall v. Ashland S. F. Co.* 97 Wis. 382, 73 N. W. 327; *Fox v. Peninsular W. L. & C. Works,* 84 Mich. 676, 48 N. W. 203, 44 L. R. A. 81, and notes; *Wolski v. Knapp-Stout & Co. Co.* 90 Wis. 178, 63 N. W. 87. All assignments of error going to the insufficiency of the evidence must therefore be overruled. The appellant cannot successfully predicate error upon the form of the first question of the special verdict for the further reason that it proposed to the court a similar question and proposed no other or different form of question. It cannot now complain of the question submitted as lacking in scope, not having proposed, or at least suggested, a question covering the issues, if any, not covered by the verdict as returned. We perceive no error in submitting to the jury for its determination, under the

circumstances in this case, the question of the sufficiency of the warning alleged to have been given as the court did by its instructions. This was in the instant case a question resting upon complicated conditions and inferences of fact such as the previous knowledge of decedent, the practice in the plating room, and the former mode of conducting the operation of emptying the cyanide of potassium tank. There was no evidence of assumption of risk as contradistinguished from contributory negligence in this case. *Campshure v. Standard Mfg. Co.* 137 Wis. 155, 118 N. W. 633. On the subject of warning the case is not ruled by *Rahles v. J. Thompson & Sons Mfg. Co.* 137 Wis. 506, 118 N. W. 350, 119 N. W. 289. Here the warning to be of any value must have been sufficiently specific to apprise an ordinarily prudent person possessing the experience of decedent of the nature of the change made or the danger to be apprehended. Any other warning would have been quite an idle ceremony.

Many errors are assigned which we cannot undertake to notice separately in this opinion. They have been all examined. We find no prejudicial error in giving the instruction relative to the burden of proof on the question of negligence sandwiched in among the instructions relative to proximate cause. The form of the special verdict relative to proximate cause justified this. Some of the requested instructions are covered by the charge given; some call attention too partially to particular items or phases of the evidence; some are correct and might have been given, but there was no prejudicial error in the refusal.

The defendant had the right to present its evidence by deposition and no unfavorable inference should be made because it chose or was compelled to choose this lawful mode. But the comments of plaintiff's counsel in this respect were corrected by a ruling of the court and no prejudice resulted therefrom. We find no prejudicial error in the rulings on the admission of evidence.

On the whole we are convinced that the trial was as nearly correct in its conduct and result as the appellant can hope to obtain or has a legal right to insist upon in a case based upon facts like those here in evidence, and that there occurred no serious or prejudicial error calling for a reversal of the judgment of the court below.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied March 14, 1911.