J. N. CRAWFORD v. MICHAEL & BIVENS, INC., AND R. B. KEPHART, TRADING AS NEW WAY LAUNDRY.

(Filed 2 July, 1930.)

1. **Master and Servant C b—Employer's duty to provide safe place to work does not apply where employer does not have control of premises.**

    The rule requiring an employer to exercise reasonable care to provide his employee a reasonably safe place to work does not apply where the employer does not have charge of or control over the premises and has no express or implied notice of the existence of unsafe conditions there, and where an employee is sent to the premises of a customer to repair an electrical switch-box it is the duty of the employee to inform the employer of any unsafe conditions or of the necessity of a helper to do the work when the work to be done is simple and it could not have been reasonably anticipated that such necessity would exist.

2. **Same—In this case held: evidence did not show that injury resulted from any negligence of employer and nonsuit was proper.**

    Where the evidence discloses that the employer ordered his employee to go upon the premises of a customer and repair an electrical switch-box, and that the premises were not under the control of the employer, and that the work to be done was simple, and that the employee did not inform his employer of any unsafe conditions there or of the necessity of a helper, although he could have easily done so by telephone: *Held*, the evidence fails to disclose any breach by the employer of his duty to exercise reasonable care to provide his employee a reasonably safe place to work and sufficient help for its performance, and defendant's motion as of nonsuit should have been granted.

3. **Master and Servant C d—In this case held: evidence failed to show breach of duty to warn or instruct employee of danger.**

    Where an electrical contractor sends his employee to the premises of a customer to repair a switch-box, and the evidence tends to show that the employer warned and instructed the employee to cut off the electricity while working thereon, which the employee knew to be the safe method of doing the work from previous experience: *Held*, the employer having warned the employee of the only danger which the employer could have reasonably apprehended the employee would be exposed to, the evidence fails to show any breach of the employer's duty to warn and instruct his employee of the dangers incident to the work.

**4. Master and Servant O c—In this case held: evidence fails to show negligence of employer in ordering employee to repair switch box.**

Where all the evidence tends to show that an employee ordered to repair an electrical switch-box had had over two years experience as a worker on electrical apparatus, and that he readily undertook to do the work ordered: *Held*, the evidence fails to show any negligence of the employer in ordering the employee to repair the switch, and the employee cannot successfully maintain that he was inexperienced and incompetent to do such work, and upon failure of the evidence to show any negligence on the part of the employer his motion as of nonsuit should have been allowed.

APPEAL by defendant, Michael & Bivens, Inc., from *Harding, J.,* at December Term, 1929, of GASTON. Reversed.

This is an action to recover damages for personal injuries sustained by plaintiff while at work as an employee of the defendant, Michael & Bivens, Inc., temporarily on the premises of the defendant, R. B. Kephart, trading as New Way Laundry, in the performance of a contract between his employer and the said New Way Laundry.

At the close of the evidence for the plaintiff, the action against the defendant, R. B. Kephart, trading as New Way Laundry, on motion of said defendant, was dismissed by judgment as of nonsuit. C. S., 567.

The issues thereafter submitted to the jury were answered as follows:

"1. Was the plaintiff injured by the negligence of the defendant, Michael & Bivens, Inc., as alleged in the complaint? Answer: Yes. ,

2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: No.

3. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $1,300."

From judgment on the verdict that plaintiff recover of the defendant, Michael & Bivens, Inc., the sum of $1,300, and the costs of the action, the said defendant appealed to the Supreme Court.

*R. G. Cherry and A. C. Jones for plaintiff.*
*P. W. Garland for defendant.*

CONNOR, J. The defendant, Michael & Bivens, Inc., is a corporation organized and doing business under the laws of the State of North Carolina. It is engaged in the general electrical business in the city of Gastonia; it sells, installs and repairs electrical apparatus and fixtures. It makes repairs on electrical apparatus and fixtures, either at its plant, or on the premises of its customers.

On 11 June, 1927, the said defendant instructed the plaintiff, one of its employees, to go to the New Way Laundry, in the city of Gastonia, and to make certain repairs to the electrical apparatus used by the owner

CRAWFORD *v.* MICHAEL & BIVENS, INC.

and operator of said laundry, in the operation of his business. Pursuant to these instructions, plaintiff went to said New Way Laundry, and while engaged in making said repairs, in accordance with said instructions, he was injured. This action was begun by plaintiff to recover of the defendant, Michael & Bivens, Inc., and of the defendant, R. B. Kephart, trading as New Way Laundry, the sum of $5,000 as damages resulting from said injuries.

In his complaint, after alleging specifically facts and circumstances with respect to the conditions under which he was at work, at the time he was injured, plaintiff alleges, generally, that his injuries were caused directly and proximately by the carelessness and negligence of the defendants in that:

"(a) The defendants carelessly and negligently failed to provide the plaintiff with a reasonably safe place in which to do and perform his work, as aforesaid.

(b) That the premises upon which and in which the plaintiff was required to work were dangerous and unsafe, and the defendants had knowledge of, or could and should have known of the dangerous condition of the same, and the defendants carelessly and negligently permitted the same to exist and remain unsafe and dangerous while the plaintiff performed his work, as aforesaid.

(c) That the defendants carelessly and negligently permitted and allowed excessive heat to be in the said pipes, in close proximity to the place where this plaintiff was required to do and perform his work, as aforesaid.

(d) That the defendants carelessly and negligently permitted and allowed the floor on and upon which it was necessary for the plaintiff to do and perform his work, to become unsafe and dangerous, slimy, slick and slippery.

(e) That the defendants carelessly and negligently and without warning to this plaintiff caused to be electrified the wires and apparatus near and at which the plaintiff was doing and performing his work by connecting and cutting on the electric current, as aforesaid.

(f) That the defendants well knew that this plaintiff was inexperienced in the character of work which he was doing, and that plaintiff was ignorant of the danger of the same, and the defendants knew, or could or should have known the danger of the work which he was doing, and failed, in their superior skill, knowledge, and foresight, to instruct and protect the plaintiff."

Both defendants in the answers filed by them, respectively, denied all allegations of the complaint upon which plaintiff contends that they are liable to him in this action; each of the defendants, in further defense, alleges in said answer that plaintiff by his own negligence, as

specifically alleged therein, contributed to his injuries, and that he is therefore barred of any recovery of the defendants in this action.

At the trial, plaintiff as a witness in his own behalf, testified as follows:

"I am the plaintiff in this action. I live in Gastonia and am now 28 years of age. On 11 June, 1927, I was employed by defendant, Michael & Bivens, Inc. I had been doing electrical work for them for over two years. I was a helper. I knew nothing about the electrical business before I was employed by Michael & Bivens, Inc. I had no knowledge of the business at the time I was injured except what I had picked up while working for them as a helper. I was preparing myself to be a 'trouble shooter.' I worked as a helper, and was trying to learn to 'shoot trouble.'

"I was injured on 11 June, 1927, while at work in the New Way Laundry, in the city of Gastonia. This laundry is owned by the defendant, R. B. Kephart. It was not under the control of the defendant, Michael & Bivens, Inc. I was sent there by Mr. Bryant, shop superintendent of Michael & Bivens, Inc. He gave me orders to go there at 2 o'clock, Saturday afternoon and replace some contacts which had been damaged. He said the power would be off at 2 o'clock, I think. I was to take off the burned contacts, and replace them with new ones.

"When I got to the New Way Laundry, I saw Mr. Robinson, the manager of the plant. I told him that I had come from Michael & Bivens to repair the switch. I asked him if the power was off. He said 'No.' I then asked him if he would cut the power off. He said 'Yes.' After I got the power cut off, I went and pulled the fuses out of the fuse box and started to work on the contacts in the starter box. The starter box was on the wall. There were pipes beneath the starter box—so close to the wall that I burned my hand on the pipes. I saw that I would have to take the starter box off the wall. I went to Mr. Robinson and asked him for a man to help me do this. He gave me a man—an employee of the laundry. We went to work, taking the starter box down from the wall. It was attached to the wall by four bolts, which went clear through the wall. My helper went on the outside of the building. He was holding the bolts with a wrench, while I was unscrewing them on the inside with a wrench. I was taking the bolts out with one hand, and holding the box with my other hand. After I had got two of the bolts loose, and while I was taking out the third, I suddenly became unconscious. I do not know what happened after that. When I regained consciousness, I was in the hospital. I was burned in several places on my body. I remained in the hospital about six weeks. It was about two months after I returned home before I was able to go back to work.

"After Mr. Robinson had cut off the power, and I had started to work, he came to me and said he wanted to run some of his machines, and would like to cut the power on for that purpose. I told him that that would be all right, I had the fuses out. The wires ran from the fuse box to the switch box. When the fuses are taken out of the fuse box, this cuts off the electricity from lines running from the fuse box down to the switch box. The current coming in had to flow through those fuses to get to the switch box. Taking out the fuses cut off the supply of electricity to the place where I was working on the switch box. When I told Mr. Robinson that I thought it would be all right for him to cut the power on, I was not working at the fuse box. I believed it would be safe if he cut on the power, after I had pulled the fuses from the fuse box, and while I was working on the switch box.

"The starter box in the New Way Laundry was on the wall—just over some pipes. The bottom of the box was about 2½ feet from the floor. The box itself was about 18 inches high, about 12 or 14 inches wide, and about the same in depth. With its contents the box weighed about 100 pounds. Beneath the starter box, were some iron pipes, which were hot. They would burn you, if you touched them. The fuse box was on the wall, above the starter box. It holds the fuses. It was about a foot square, and made of iron. There were 3 fuses in it.

"The floor underneath the starter box was concrete. There was a slick substance on the floor which made the place where I had to stand while at work very slick. I did not notice whether the floor slanted or not.

"I had not been sent out alone by Michael & Bivens on a job of this character before. No one was sent with me. Before going on the job, I was not warned or instructed or admonished by any one at the plant of Michael & Bivens of the danger which might attend the work or the care that I should take for my protection. I took some contacts, and a few tools with me. The contacts are copper parts that make and break the current. Without them the switch cannot be closed. I had never replaced any contacts in the shop before that time. I do not know what voltage was used in the plant of the New Way Laundry. When I was sent out on this job I was not a competent or experienced 'trouble shooter.' Under normal conditions, it takes two or three years training to make a competent 'trouble shooter.' I had been at work for Michael & Bivens as a helper for two years and three or four months. When Mr. Bryant sent me to the New Way Laundry he told me that he had made arrangements with Mr. Robinson to replace some contacts, and that he wanted me to do the work. I told him all right, and he gave me some contacts which I took with me to the job. He told me that the power would be cut off at 2 o'clock. This was all the conversation I had with him about the job."

There was evidence tending to show that the helper furnished the plaintiff at his request by the New Way Laundry, while at work on the outside of the building, received an electric shock at the time the plaintiff became unconscious. There was also evidence tending to show that some of the burns on the body of the plaintiff were made by electricity, and that other burns were caused by the hot pipes in the laundry, when plaintiff fell on the pipes, after he became unconscious. There was no evidence tending to show that after he got to the New Way Laundry, and saw the conditions under which he would be required to work, plaintiff communicated by phone or otherwise with his employer, Michael & Bivens, and notified him of the conditions at the laundry. All of the evidence tended to show that plaintiff was fully aware of these conditions before he began to work, and while he was at work.

The question as to whether there was evidence at the trial of this action from which the jury could have found that the defendant, R. B. Kephart, trading as New Way Laundry, was liable to plaintiff for the damages resulting from the injuries sustained by him while at work on his premises, is not presented by this appeal. The trial court was of opinion that the evidence offered by the plaintiff was not sufficient to establish liability on the part of said defendant, and therefore sustained his motion, made at the close of the evidence for the plaintiff, that as to him the action be dismissed as of nonsuit. The plaintiff did not except to the judgment dismissing the action as to said defendant, nor appeal therefrom to this Court. The only question, therefore, presented for our decision by this appeal is whether there was error in the refusal of the court to allow the motion of the defendant, Michael & Bivens, Inc., made first at the close of the evidence for the plaintiff, and renewed at the close of all the evidence, that the action be also dismissed as to said defendant.

The defendant, Michael & Bivens, Inc., is not liable to plaintiff in this action, unless his injuries were caused, directly and proximately, by its negligence, as alleged in the complaint. Liability on the part of this defendant cannot be predicated solely upon its relationship as employer to the plaintiff, at the time he was injured. Because of such relationship, however, the law imposed upon said defendant certain duties to be performed by it, the breach of any of which, if the direct and proximate cause of the injuries, was actionable negligence. One of these duties was to exercise due care to provide for the plaintiff a reasonably safe place in which to work. The general rule of the law imposing upon the defendant this duty was not applicable, however, in the instant case, while plaintiff was at work, temporarily, on the premises of the New Way Laundry, for the reason that the place at which plaintiff was required to work was not under the control of said

defendant. In *Channon v. Sanford Co.,* 70 Conn., 573, 40 Atl., 462, 41 L. R. A., 200, 66 Am. St. Rep., 133, it is said: "This general rule (imposing liability upon the master for injury resulting from unsafety of the place in which the servant works) is not ordinarily applicable to cases where the master neither has nor assumes possession, use or control, legal or actual, of the premises or place where the servant may be at work. The general rule is based upon such possession, use and control by the master of the premises where he puts his servant at work for him, and speaking generally his duty to use due care to make and keep such place reasonably safe flows from, and is measured by, such possession, use and control. Just as the master's liability for the acts of his servants is based upon his power to control them, so his duty to provide reasonably safe premises is founded essentially upon his occupation, use and control of such premises. This being the reason of the rule, when the reason does not exist, the rule is inapplicable." See, also, *Wilson v. Valley Improvement Co.,* 69 W. Va., 778, 73 S. E., 64, 45 L. R. A. (N. S.), 271, where it is held that a master, having contracted temporarily to perform labor by and through his servants, upon premises owned and fully controlled by another person, and having no knowledge of danger to his servants from defectiveness of the premises, or machinery and appliances of such third person incidentally and casually to be occupied and used by them for the purpose and not having guaranteed the safety or suitableness thereof, is under no duty to inspect the same, nor liable for an injury to his servant, occasioned by defects therein.

"As a general rule the peculiar duties that an employer owes to his employees relate only to premises and instrumentalities over which the employer has complete control and dominion. Otherwise he might be made responsible for the negligence of third persons with reference to premises he had never seen, and about the condition of which he knew, and perhaps, could know nothing." 18 R. C. L., p. 585.

Upon the facts shown by all the evidence in this case, if plaintiff's injuries were caused by the conditions under which he was at work on the premises of the New Way Laundry, this defendant cannot be held liable for the damages resulting from said injuries. There was no evidence from which the jury could have found that this defendant was negligent with respect to the place at, or the conditions under which plaintiff was at work at the time he was injured.

Ordinarily, it is the duty of an employer who orders his employee to work at a place of danger to warn his employee of the danger, and to instruct him how to avoid the danger. In this case, the only danger which the defendant had reason to apprehend plaintiff would be exposed to, while working under its orders, on the premises of the New

Way Laundry, was the presence of the electric power used to operate the machinery in the laundry. Plaintiff was instructed, in effect, not to begin work until this power was cut off. He fully understood the danger, and did not begin work until he was assured by the manager of the laundry that the power had been cut off. Therefore, there was no negligence on the part of the defendant arising from a breach of its duty to warn plaintiff of the only danger which defendant had reason to apprehend.

It is also the duty of an employer to exercise due care to furnish to his employee sufficient help to enable him to do the work required of the employee with reasonable safety. There is no evidence in the instant case tending to show a breach of this duty. The work which the plaintiff was ordered to do was simple. If after he arrived at the laundry, he discovered conditions which made it necessary for him to have help, it was his duty to communicate with his employer, and advise him of such conditions. *Hemphill v. Standard Oil Co.,* 197 N. C., 339, 148 S. E., 443.

Plaintiff testified that at the time he was ordered by defendant to go to the New Way Laundry and to replace the contacts in the starter box, he was not a competent or experienced "trouble shooter." All the evidence shows, however, that he had had over two years experience as a worker on electrical apparatus, in the employment of defendant. His own testimony shows that he readily undertook to do the work required of him, and that he fully understood the apparatus which he was ordered to repair. There was no evidence tending to show that his injuries were caused by the negligence of the defendant, Michael & Bivens, Inc., and for this reason there was error in the refusal of the court to allow the motion of said defendant that the action be dismissed as of nonsuit. The judgment is

Reversed.