# Richmond

## R. S. BURRUSS, JR., AND W. H. BURRUSS v. W. E. SUDDITH.

April 28, 1948.

Record No. 3288.

Present, All the Justices.

The opinion states the case.

*Robert A. Russell, George Abbitt, Jr.,* and *W. M. Abbitt,* for the plaintiffs in error.

*Easley & Edmunds* and *Thompson & Thompson,* for the defendant in error.

STAPLES, J., delivered the opinion of the court.

The Circuit Court of Campbell County rendered judgment for $5500 damages against the defendants, Burruss Land and Lumber Company, a partnership (plaintiffs in error), in favor of the plaintiff W. E. Suddith. The plaintiff's notice of motion for judgment alleges that he sustained severe physical injuries by being struck by a log thrown from a ripsaw or edger machine while he was rightfully on the premises of defendants' sawmill or planing mill, and that the injuries were caused by the negligence of defendants' agents and servants in the operation of said machine in negligently failing to warn the plaintiff of the danger to which he was exposed at the time of the injury. Defendants' brief gives the following description of this machine and its manner of operation, the accuracy of which is not questioned by the plaintiff.

"The edger is a machine that takes the rough edges off of the boards after the log has been sawed into the boards by the band saw. Also the edger saws the board into the proper widths. The band saw cuts the board into the proper thickness; then the edger cuts the board into the proper width. This particular edger has eight saws with one axle, which was run at approximately 1,200 revolutions per minute; for example, the band saw will cut a board,

depending of course upon the size of the log, 9 inches wide and 2 inches thick. The saws are so arranged on the edger that by pushing the 9 inch board through the edger the two rough edges will be cut off and one saw will cut down through the middle of the board, making two pieces of lumber, known as two 2 x 4's; that is, two inches thick and four inches wide—the edger having nothing to do with the thickness of the plank, that having been attended to by the band saw. When the band saw rips a board off of a log the board falls on a conveyor, which brings the board the short distance of approximately fifteen or twenty feet, right by the edger. The operator of the edger stands just in front of the edger and as the board goes by on the conveyor, if it has rough edges and has not been made into a finished plank by the band saw, the operator of the edger steps on a trigger which is just in front of the edger where the operator stands. This gadget causes the board in question to get on another conveyor which brings the board up to the edger operator. The edger operator then picks up the board and, standing in front of the edger, pushes the board into the edger. The saws are mounted on an arbor and almost entirely hidden from view by the metal case around them. The operator is ten feet from the mantle arbor, or pulley, upon which the saws are mounted. There is a platform standing out in front of the edger, upon which the operator places the timber and shoves it into the edger. This platform is approximately ten feet long and about the same distance wide. There is another table or platform on the other side of the edger that takes care of the boards after they have gone through the edger. There are two live rollers on the bottom with two idle on the top as weights. The board is pressed between these sets of rollers, the two bottom live rollers are turning, which helps to pull the board into the edger. The top rollers are merely weights to hold the board down. Due to protection around the saws and the edger, it is impossible for a board to go anywhere except between the two sets of rollers. The board is supposed to keep

right on through the edger, coming out on the other side in the proper width. The saws look similar to, and are like ordinary wood saws that farmers use to cut up firewood, commonly known as a cut-off saw and being from twelve to sixteen inches in diameter."

Plaintiff was an assistant commissioner of the revenue of Campbell county, and following the usual custom of that office was visiting the sawmill in order to obtain a list of the taxable property of the various employees. He had already interviewed several of them and was waiting to interview Arrowwood, the foreman, as soon as he should be temporarily at leisure. While waiting for such interview he was standing behind the edger machine. Suddenly the log which was being processed jammed and was thrown violently backward out of the machine, striking the plaintiff and inflicting upon him serious and painful injuries.

The first three assignments of error challenge, in one way or another, the sufficiency of the evidence to support the verdict.

The trial court held that the machine in question was not inherently so dangerous as to require a notice or other general warning when it was operating normally. But it also held that the testimony of defendents' foreman Arrowwood disclosed that he had knowledge that it was not operating normally just preceding the accident. He observed the log catch in the saw teeth and knew that this constituted a danger or peril to the plaintiff whom he saw standing behind the machine. Therefore, the court held it was a question for the jury to determine whether, under the circumstances, the foreman used reasonable care to assist in preventing the ejection of the log, and also to warn the plaintiff of his danger.

With respect to their alleged negligent failure to warn, the defendants insist that the allegations of negligence in the notice are predicated solely upon the theory that the machine is inherently dangerous even when operating in a normal manner; that the notice alleges no violation of a duty to warn of an unexpected danger which might

arise due to the happening of an unusual event during the operation, and that the trial court, having held that the machine was not inherently dangerous at ordinary or normal times, the plaintiff's allegations of negligence do not entitle him to rely on the failure to warn of the unexpected danger which suddenly arose. The notice of motion contains, among others, the complaint that the defendants' servants and agents "knew of my presence and my position of danger" and "failed to give any warning by posting signs or by personal communication to warn me (the plaintiff) at the time aforesaid of danger resulting from the operation of the said ripsaw, and as a result of the said danger *known to you at that time* and of which I had no knowledge, I exposed myself to the said danger, as aforesaid, and failed to take precaution for my safety which I could have taken had I been adequately warned of the danger from said ripsaw." We think these and other allegations of negligence contained in the notice must be held to include any failure to use due care to warn the plaintiff at any time after defendants' agents knew that the position he occupied was one of peril of which he was unaware.

■ Upon the question of the sufficiency of the evidence to support a finding by the jury of negligent failure to warn, the testimony of several witnesses is pertinent. The verdict of the jury in favor of the plaintiff, of course, entitles him to have all conflicts in the evidence and reasonable inferences therefrom resolved in his favor.

Plaintiff's witness, R. M. Felton, testified that there is always the danger, in connection with the operation of the edger machine, that the piece of timber being processed will be ejected backward out of the machine at a rapid rate of speed, although "it is a very, very rare occurrence;" that this possibility or danger is a fact well known to the operators of such machine; that it is greater in handling dry timber and hardwood than softer woods, and that the amount of care used in the operation governs the degree of the possibility of personal injury.

P. F. Arrowwood, defendants' foreman in charge of the whole mill, was called by the plaintiff as an adverse witness. From his testimony the jury would have been justified in finding the following facts: that he was aware of the possibility of a log being ejected backward during the operation of this machine, but it is a very rare occurrence; that he had seen it happen once before; that just before the accident to the plaintiff happened he was watching defendants' employee Viar operate the edger machine; that the piece of timber which Viar was trying to get through the machine was shriveled on one end and "didn't look like it wanted to go through;" that it was a tough piece of hickory timber and Viar was having difficulty with it so he went to help Viar push it through; that he and Viar were both standing on the side of the machine at the time and were not behind it; that when he realized that there was danger that the timber would be caught in the saws and hurled backwards from the machine, he looked to see if any person was behind the machine within the path the timber would travel if ejected and saw Suddith, the plaintiff, standing there about fifteen feet beyond the edger table; that he then motioned to the plaintiff three times with his hands for him to get back; but that the plaintiff did not move at all, simply stood smiling; that thereupon the witness, Arrowwood, thought he had better go back and get the plaintiff out of the way in case the timber did come out of the edger; that he started back to tell him to get out of the way and had gone about two feet or more behind the edger when the piece shot out and hit the plaintiff; that he did not yell or holler to the plaintiff because the mill was making so much noise he did not think he would be heard; that if the plaintiff had moved when he waved at him, he would have had time to get out of the way because the witness could have helped hold the timber, and both he and Viar could have held it in the machine and probably have made it go on through. Defendants' witness Viar, who was operating the machine, testified that when he felt the log give he knew something

was about to happen and he looked back, saw the plaintiff and hollered to him. The plaintiff testified that he heard Viar holler just a split second before the timber struck him; that there was considerable noise incident to the operation of the sawmill, yet he could carry on conversations with the persons in the mill without any difficulty. In reply to the question whether he could have heard the foreman Mr. Arrowwood if he had called to warn him, plaintiff testified as follows: "I could. I don't think Mr. Arrowwood called me but somebody, in the split second I was hit, I heard somebody holler. I heard that, and I furthermore heard Mr. Arrowwood say to the man who was running the machine, 'Can you make it?' and that is the last thing I recall before I was hurt." Plaintiff further testified that Arrowwood had previously seen him standing in the place where he was hurt. From the foregoing facts the jury would have been justified in concluding that the foreman Arrowwood was negligent in failing to warn the plaintiff at the time he discovered there was trouble and asked Viar whether he could "make it," which the plaintiff actually heard. Such negligence might also have been found from the failure of the foreman to yell or holler to the plaintiff instead of waving to him when he believed the plaintiff was in a position of peril. The plaintiff's response to the waving was a smile, and the jury may have thought he interpreted it as a gesture of greeting rather than a warning. Plaintiff did hear Viar when he hollered as the timber was in the act of leaving the machine and from this fact the jury would have been justified in finding that he would also have heard the foreman if he had shouted an effectual warning at the time he waved at the plaintiff. We think the evidence referred to is sufficient to support a finding by the jury that the defendants' foreman failed to use reasonable or ordinary care to warn the plaintiff of the danger to which he was exposed after said foreman was cognizant of such danger.

A further reason is advanced against the sufficiency of the evidence. Defendants assert that, even though

the testimony of their employees might be held adequate to support a jury finding of negligence, their testimony is inconsistent with that of the plaintiff himself, and the plaintiff is estopped to avail himself of it. In other words, the contention is that the plaintiff is bound by his own testimony. The defendants' version of this testimony of the plaintiff may be briefly summarized as follows: That the plaintiff testified that he was standing about five to ten feet from the edger; that the foreman Arrowwood was standing beside him, one or two feet away, before the former moved up to the machine; that just as the foreman stepped over to help Viar out of his difficulty the timber hit the plaintiff; that within five or ten seconds after Arrowwood called to Viar "can you make it" the timber flew out. The defendants argue that, if the facts thus testified to by the plaintiff are true, the defendants' agents had no opportunity to warn him of the danger to which he was exposed. But there is other testimony of the plaintiff that indicates his memory was vague and confused as to what occurred just before the accident. In the course of his examination by the respective counsel he also said, "I think one of the gentlemen was feeding the machine and he left me and went to help the other man push that timber." "I would say that was ten or fifteen seconds, maybe not over five" before the accident. He further testified that while he was standing five feet behind the machine he saw the men "shoving it (the timber) through the edger." In reply to a question whether they continued to do so until just a split second before he was hit, plaintiff said, "I don't know how long it was. They were there beside the timber when I was hit, two men and possibly three. I say I know there were two and I think three." "Their backs were not to me, their sides were to me."

It is not surprising that the plaintiff retained no clear or detailed recollection of exactly what occurred just prior to the accident. He stated that he was not paying any special attention to the machines. Even where the observation of events occurs under favorable circumstances the opinions of

the courts abound with references to the fickleness and infirmities of the memory of the observer. But in this case the plaintiff was the victim of a violent blow which fractured and otherwise injured the bones of his legs so that for several weeks thereafter he had to remain in bed with weights attached to both of them to straighten them out. He testified that during his illness he lost count of the days, weeks and months. He said: "My mind was just as bad off as my body was. I was weaker in my mind than I was in my body, I think."

The rule that a plaintiff is bound by his own testimony, which was laid down in *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652, and has been followed in subsequent cases, had no application to evidence of this character. It is intended to compel the exercise of good faith on the part of a litigant not to penalize him for honest mistakes or infirmities of memory. Particularly would this be true in an expression of opinion as to the lapse of time between links in a swiftly moving chain of events. See *Waller* v. *Waller*, 187 Va. 25, 46 S. E. (2d) 42, 44; Moore on Facts, sections 863, 728, 745.

We think that under the circumstances shown by the evidence it was for the jury to weigh the testimony of the several witnesses, and that the conclusions reached by the jury and approved by the trial judge should not be disturbed by this court.

The fourth assignment of error is to the giving of plaintiff's instruction No. 1, which is as follows:

"The Court instructs the jury that if they believe from the evidence that when the plaintiff, Suddith, entered the property of the defendant, his presence there was known to the employees of Burruss Land and Lum*br* Company in charge of the plant, that the plaintiff approached the edger while it was operating, and that said employees knew of his approach to said edger, and knew, after the piece of timber in the edger hung or failed to pass through, that the plaintiff was in a position of danger from the operation of said edger, and that the plaintiff was himself unaware of

his danger, then it became and was the duty of said employees to use reasonable care to avoid injuring said plaintiff; and if the jury further believe from the preponderance of the evidence that said employees then and there failed to use such reasonable care and that such failure was the proximate cause of the injury to Suddith, then they must find for the plaintiff."

This instruction was objected to on the ground that the only allegation of negligence contained in the notice of motion was a failure to use reasonable care to warn the plaintiff of the danger to which he was exposed, whereas the instruction permitted a verdict for the plaintiff if the jury should find the foreman Arrowwood was negligent in not continuing to hold the timber after he discovered plaintiff's danger or in some other respect. It is true that, while the said notice charged the defendants with negligence "in the operation of" said machine, the only specific negligent act or omission complained of was failure to warn. It is also true, however, that the only evidence of said act of the foreman in not continuing to hold the timber was his own statement to that effect when he was testifying, having been called by the plaintiff as an adverse witness. The defendants did not object to this evidence or afterwards move to exclude it. If they had done so an opportunity would have been afforded the plaintiff to amend his pleading to conform thereto. There is no indication that he had any previous knowledge of this action of the foreman, nor does it appear that the defendants have been prejudiced by a failure to amend the charge of negligence in the notice. In the case of *Newport News & Old Point R., etc., Co.* v. *McCormick,* 106 Va. 517, 518, 56 S. E. 281, the court says:

"The first assignment of error is to the refusal of the Court to grant an instruction founded upon an alleged variance between declaration and proof. Of that assignment it is sufficient to observe that no objection having been made to the admission of evidence, or no motion made to exclude it on account of the supposed variance, the objection must be considered as having been waived. This

rule of practice would deprive the plaintiff in such a case of the benefit of Section 3384, Virginia Code 1904." (Now section 6250).

See also, to the same general effect, *Conrad* v. *Ellison-Harvey Co.*, 120 Va. 458, 91 S. E. 763, Ann. Cas. 1918B, 1171; *Virginia, etc., R. Co.* v. *Bailey*, 103 Va. 205, 49 S. E. 33; *Hawkins & Buford* v. *Edwards*, 117 Va. 311, 84 S. E. 654.

At defendants' request the court granted instruction D, which was as follows:

"The court instructs the jury that the only duty owed by Burruss or their employees to Suddith was, after they realized Suddith was in peril, to use such care and warning as a reasonably prudent person under similar circumstances would have used, and therefore you are instructed that if you believe from the evidence in this case that Philip Arrowwood did attempt to help Viar get the board in question through the edger, and after doing so saw and realized that Suddith was in peril, and that Arrowwood did thereafter use such care as a reasonably prudent person would have used under similar circumstances to warn Suddith of his peril, then the defendants are not liable in this case and you should find a verdict for the defendants."

This instruction restricted the jury to the consideration of failure to warn as the only act of negligence on which they could base a verdict for the plaintiff and we think was more favorable to the defendants than they were entitled to, in view of the foreman's testimony.

We have considered all the instructions, those refused as well as those granted, and the defendants' objections with respect to them, and find no error prejudicial to the defendants.

On the whole case we are of opinion to affirm the judgment of the circuit court.

*Affirmed.*

HUDGINS, C. J., dissenting.