# Richmond

ALISON E. SADLER v. EMMA P. LYNCH, ADMINISTRATRIX, ETC.

May 7, 1951.

Record No. 3770.

Present, Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Charles B. Godwin, Jr.,* and *Mills E. Godwin, Jr.,* for the plaintiff in error.

*Thomas L. Woodward* and *Jacob L. Woodward,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Elbert Lynch was killed apparently as a result of touching a dump truck which had become electrified when the boom of a mechanical crane, by which a metal dragline bucket was being loaded into the truck, came in contact with an electric wire carrying about 6400 volts. His administratrix brought this action for damages, alleging that his death was due to the negligence of the defendant Sadler, owner of the truck and crane, and recovered a verdict and judgment for $2,500, which this writ of error brings up for review.

Sadler was a crane operator of long experience. Lynch, a married man about 25 years old, had been employed by him as a laborer in that business for three weeks but did not work on Saturdays. On the Saturday of this accident, Lynch asked to borrow this dump truck for his own use. Sadler agreed but told Lynch he would first have to use the truck to haul the dragline bucket to a place where he expected to use the crane. The

crane was then stuck in the mud on the property of Sadler's brother.

The crane was pulled out of the mud by a motor grader and onto a farm road, along the side of which were poles carrying several electric transmission lines on cross-arms extending partly over the road. Lynch then backed the dump truck down the road to a point about 25 feet from the crane so the bucket could be loaded into the bed of the truck, which was of metal.

The crane was mounted on a revolving platform on a motor truck and was equipped with a steel boom with an operating radius of about 25 feet. The dragline bucket, which was used for excavating, was attached to the end of steel cables which worked over pulleys in the end of the boom and thence down to a drum operated by a motor in the housing in which Sadler, the operator, sat.

After Lynch placed the truck he got out of it and Sadler told him to get away from the truck and stay away. Lynch thereupon moved from five to seven feet away from the truck and beyond the reach of the boom. Sadler then picked up the bucket with the boom, swung it over and lowered it into the bed of the truck. It was then not sitting straight in the truck so Sadler undertook to shift it around. In doing so the boom apparently touched the electric wire. Sadler, then watching the boom and the bucket, did not see Lynch touch the truck but out of the corner of his eye saw him fall. He went to him and found him lying four or five feet from the truck about midway of and parallel to it.

The only other person around at the time was Baird, the operator of the motor grader, who was then driving the grader away and the motor of the crane was also running. He did not see Lynch approach the truck or fall, but on hearing Sadler hollo he ran back to see what had happened and found Lynch lying on the ground. The only mark on Lynch was a burn on his left hand, between the thumb and forefinger. There was no mark on the boom to indicate contact with the electric wire, but an expert witness for plaintiff testified that although there would usually be a mark, it was possible that there would not be. The sheriff testified that Sadler told him that the boom struck the wire and he thought Lynch had his hand on the truck and was electrocuted.

We need not stop to discuss the relation of Lynch to Sadler

at the time, whether invitee or employee. The instructions given at the request of both plaintiff and defendant submitted to the jury the question of whether Sadler used such care in warning Lynch of the danger as a reasonably prudent person would have used. See *Burruss* v. *Suddith,* 187 Va. 473, 47 S. E. (2d) 546. That and the question of decedent's contributory negligence were the only issues before the jury and the only issues presented here by the defendant's assignments of error.

In the case of an invitee we have held that the warning must be given in a reasonably effective way. *Knight* v. *Moore,* 179 Va. 139, 147, 18 S. E. (2d) 266, 270. In the case of a servant we have held that it is the duty of the master to warn the servant of all dangers to which he will be exposed of which the master is or ought to be aware, except such as the servant knew or ought to have known about. *Low Moor Iron Co.* v. *La Bianca,* 106 Va. 83, 55 S. E. 532. If there is any difference in the scope of the required warning, it should be in favor of the servant rather than of the invitee, and most of the cases have arisen out of the relation of master and servant.

The sufficiency of the warning may depend on a number of factors, such as the intelligence and experience of the servant and the nature of the danger. *Grant Storage Battery Co.* v. *De Lay,* 87 F. (2d) 726; 56 C. J. S., Master and Servant, § 290, p. 1052.

"The standard of care required of one maintaining a dangerous agency must be commensurate with the risk therefrom reasonably to be foreseen." *Bennett* v. *New York, etc., Power Co.,* 294 N. Y. 334, 62 N. E. (2d) 219, 220.

A mere general warning of danger may be insufficient, and an insufficient warning is in legal effect no warning. 56 C. J. S., *Idem,* p. 1053; 38 Am. Jur., Negligence, § 31, p. 677; *Fidelity Trust Co.* v. *Wisconsin Iron, etc., Works,* 145 Wis. 385, 129 N. W. 615.

The evidence in this case as to warnings, which comes from the defendant and his witnesses and is not contradicted, shows that the following warnings were given to plaintiff's decedent:

After Lynch moved the truck into position to receive the bucket, Sadler told him to move away, "to stay clear of the truck and get out of the way of it."

Lynch was present when Sadler had operated the crane around power poles "at Pierce's." There he had to move under

wires on the side of the road, "and I told him not bother with the crane, or truck, or anything until I got in the field."

At a place referred to as the theater, Sadler had to move next to a pole on which there was a power line in order to get the crane into position for work, and he told Lynch then "to stay away from here if I was near the pole." The manager of the theater was there at the time and Sadler told him also.

He was asked if he ever told Lynch why he did not want him there when he was working around wires and he replied, "I told him it was dangerous. In other words, if anything should happen, if the cable should break and the boom twisted and I was by the wire, it would fall on the wire."

Again, Lynch was with Sadler one day when he dug a ditch on his brother's place under this power line. Sadler required Lynch to stay up on the hill and did not allow him to be where the crane was operating. He testified that Lynch knew why he did not let him go down there; that where the work was being done he just had room under the wires to operate the crane. He said he told Lynch he should not be near any of that equipment when he was working under the power line, "and I told him never to lay up on the crane, never to come around there if he wasn't busy, if I was working around the power line."

On another occasion when the truck was being loaded with dirt Sadler told Lynch to get out of the truck and stand back.

When a proper warning has been given, a defendant is relieved from liability for injuries received by one who does not heed it, 56 C. J. S., *Idem*, § 290, p. 1053; and failure to heed it is usually contributory negligence. 56 C. J. S., *Idem*, § 460, p. 1302; 38 Am. Jur., Negligence, § 198, p. 878; *Ove Tysko* v. *Royal Mail Steam Packet Co.*, 9 Cir., 81 F. (2d) 960.

In *Fisher* v. *Prairie*, 26 Okla. 337, 342, 109 P. 514, 516, it was said that the duty of the master to warn "will be held to have been fully performed if the information which he imparted was sufficient when supplemented by the servant's own personal observation to enable him to reasonably appreciate the risks of the employment."

In Labatt's Master & Servant, Vol. 3, § 1160, pp. 3080-81, is this statement: "In numerous cases the servant has been allowed to recover for the reason that the court felt itself unable to say, as a matter of law, that the master's culpability might not reasonably be inferred from evidence which indicated that the

servant, although he had been warned in general terms as to the danger of the work, had received no special warning in regard to the particular danger to which the injury was due, or no explicit instruction as to the proper manner of avoiding it, and that, under the circumstances, the information which the master had thus failed to communicate was necessary to enable the servant to obtain an intelligent comprehension of the danger.''

On the evidence above stated, which is all there is on the subject, Lynch had been warned in much more than general terms. He had been warned specifically that it was dangerous to be around the crane when it was operating under power lines, and had been given explicit instructions as to the proper, and in fact the only, way of avoiding it; that is, by staying away from the truck. It is true he was not told that if the crane touched the wire at the same time as the bucket touched the truck, the truck might be charged with a deadly current, but we do not think that here the duty of the defendant extended to explaining exactly how the danger against which he had been warned might operate.

There is no evidence as to the intelligence or experience of the decedent beyond the fact that he was a married man 25 years old and had been working for Sadler for three weeks. He could see for himself that the boom of the crane was very close to the power lines, which he had been warned was a dangerous condition. Certain it is that if he had obeyed the specific order to get away and stay away from the truck no harm would have come to him. Sadler was still engaged in loading the bucket into the truck when Lynch left his place of safety and came to the truck in violation of his instructions and with no reason or necessity for doing so. He did that before the bucket was finally settled in the truck and the boom then had to be disconnected from it by Sadler. Lynch did not know how to do that, he had no duty connected with it and could not have moved the truck until it had been done.

In *Brickell* v. *Shawn*, 175 Va. 373, 379, 380, 9 S. E. (2d) 330, 332, 333, Shawn was killed when the frame for an electric sign which was being constructed on a roof fell sideways and knocked him off a parapet at the front of the roof. Brickell, his employer, had warned Shawn ''not to get on the parapet and to stay clear of the structure.'' Shawn was performing no duty which required him to be on the parapet, yet, as the opinion states, ''he

left a place of safety on the flat roof, where his duties required him to be, caught hold of the structure and pulled himself up on top of the narrow wall. When the structure collapsed he was knocked or fell to the pavement below. Clearly, we think, he was the author of his own passing."

There Shawn was not instructed as to the particular way the potential danger might operate to cause him injury, but his death came from his violation of a specific order to stay away from the source of danger.

In *Gray & Bell* v. *Scott,* 66 Pa. St. 345, 5 Am. Rep. 371, relied on by plaintiff, defendants were employed to deliver coal to a rolling mill, owned by Painter & Company, over a private tramway, which it was the duty of the defendants to keep in repair. Underneath this tramway was a passageway which the plaintiffs' son had been warned off of by the Painters because of danger which they apprehended from the use of it by workmen rolling trucks, wheelbarrows, etc. Plaintiffs' son was killed while in this passageway by a car negligently pushed by the defendants from the tramway above. The court held that a defense of contributory negligence was rightly rejected because it would have imputed to the plaintiffs' son negligence "in not regarding a warning of danger from a cause entirely different from that by which he lost his life." The court said he could not be guilty of negligence as to the defendants (who had given him no warning of danger from the tramway), unless he had some reason to expect danger from that source, and a duty of care on his part in relation to it. The distinction between that case and this is plain.

In *Bennett* v. *New York, etc., Power Co., supra,* also relied on by the plaintiff and similar to this case in its general facts, not only was no warning given, but there was even an assurance of safety.

Usually where failure to give sufficient warning has resulted in liability, it has been in cases where the master has assigned an inexperienced servant to work at a dangerous place or with a dangerous instrumentality without instruction as to dangers inherent in the work sufficient to enable the servant to avoid injury. *Crawford* v. *Michael & Bivens,* 199 N. C. 224, 154 S. E. 58; *Dothan* v. *Hardy,* 237 Ala. 603, 188 So. 264, 122 A. L. R. 637; *Obenchain* v. *Harris & Cole Bros.,* 148 Iowa 86, 126 N. W. 960;

*Cotoia* v. *Seale,* 306 Mass. 101, 27 N. E. (2d) 706; Labatt's Master & Servant, Vol. 3, § 1159, p. 3078.

We hold that the evidence in this case shows that there was sufficient instruction as to the danger involved and how to avoid it, and hence the defendant was not guilty of negligence in this respect, but the death of the decedent was due to his own negligence in failing to heed the instruction given him.

The judgment below is reversed and final judgment will be entered here.

*Reversed and final judgment.*