JOHN CHANNON vs. THE SANFORD COMPANY.

First Judicial District, Hartford, May Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The reason for the general rule of law which requires the master to ex-
ercise due care to provide his servant a safe place in which to work,
is that the master is ordinarily in the possession or control of the
premises where the work is done. But where he has no such pos-
session or control, actual or legal, and merely sends his servant to
the premises of another to do certain work there, requested by the
latter, the master does not incur any legal responsibility to the ser-
vant for the unsafe condition of such premises, unless, indeed, he
specially, or upon the facts found impliedly, assumes such obliga-
tion.

The facts in the present case reviewed and held insufficient to justify
an implied assumption of such an obligation.

[Argued May 4th—decided June 1st, 1898.]

ACTION to recover damages for personal injuries received
through the claimed negligence of the defendant, brought to
the Court of Common Pleas in Hartford County and heard
in damages to the court, *Peck, J.;* facts found and judg-
ment rendered for the plaintiff for $1,000 damages, and ap-
peal by the defendant for alleged errors in the rulings of
the court. *Error and cause remanded for assessment of nomi-
nal damages.*

The questions in the case arise entirely upon the finding
of facts, which is as follows: "1. On June 3d, 1897, the
plaintiff was sixty-seven years old, and had been for many
years an ornamental plasterer. He was then, and for eight
or nine months had been, in the employ of the defendant.
2. The defendant was, and now is, a corporation organized
under the joint stock laws of the State of Connecticut, for
the manufacture of plastic ornaments and decorations, and
placing the same in buildings, located and having its princi-
pal place of business in the city of Hartford. 3. The de-
fendant, in the spring of 1897, had made on the order of one
John F. Caulfield, a mason and contractor of New Britain,

certain plaster ornaments for St. Joseph's Roman Catholic Church, which at that time was in process of erection at New Britain by said Caulfield as general contractor. 4. Said Caulfield was an experienced mason and contractor, having been engaged in business as such for thirteen years. 5. The mason work and plain plastering of said church had been · practically completed by said Caulfield, and the interior wood-work was being placed in position, when the injury to the plaintiff occurred. A solid and substantial staging had been built by said Caulfield or his workmen for the purpose of reaching said work, and stood about two feet distant from the walls, measured from the inside of the staging to the face of the walls. Said staging had been used and was being used by all the workmen engaged on the interior of the church. 6. After said ornament had been delivered to Caulfield he told the defendant that his men could not put it in place, and requested the defendant to place the ornamental work in position, and Caulfield agreed to furnish whatever was necessary, that is, staging, a helper, plaster, putty, etc. The plaintiff had no knowledge of this agreement, except as hereinafter stated. 7. On June 3d, 1897, the defendant, by its foreman, requested the plaintiff to go to New Britain and place said ornaments in position. The plaintiff told the foreman that he had never put ornaments in place, that he had never worked on staging in his life, and knew nothing about building them, and that he would not do it. These statements as to his lack of experience with, and knowledge of, staging were true. The foreman told him that Caulfield was to see to the staging, that the main staging was already in place, and that it had been used by all the workmen on the interior of the church, and assured him that the staging would be entirely safe. The plaintiff thereupon consented to go. 8. The plaintiff asked that he might have one Schwartzing as a helper, and the foreman agreed to send him with the plaintiff. 9. On the next day the plaintiff and Schwartzing went to New Britain. Defendant's foreman met them there by agreement, and took them to the church. He there pointed out to the plaintiff the places where the

several ornaments were to go, and told him if he wanted any help, as for instance the bringing of water, plaster, or putty, or the shifting of any staging, to call on a workman then present, whom he pointed out to the plaintiff. This was one Burns, a mason in the employ of Caulfield. 10. Burns was an experienced mason, competent to build staging. He was paid by Caulfield. 11. The plaintiff was paid by defendant, who charged his time at an increased rate to Caulfield. He was in the exclusive employment and control of defendant while doing the work. He was himself in charge of this job, and received no orders from any one after beginning work. He did not in any way communicate with Caulfield. 12. The plaintiff and Schwartzing were engaged in placing the ornaments in position Friday, Saturday, and Monday, June 4th to 7th. On the afternoon of Monday the plaintiff was about to fasten up a frieze which ran between, and on the same level as, the capitals of two small pilasters, which latter projected from the wall about six inches, and were about fifteen feet from the floor. Up to this time they had used the main staging mentioned in paragraph 5 hereof. They could not conveniently reach the location for this frieze from the main staging, and the plaintiff asked Burns to make an additional stage, projecting from the main staging toward the wall. 13. Burns built said additional staging, but he negligently failed to properly support it, and it was not strong enough for the use required. 14. Almost immediately after the plaintiff went upon the staging it gave way and precipitated him to the floor. 15. The plaintiff was seriously bruised, and received injuries to the spine which have rendered him permanently unable to do the usual work of his trade, or any work except of a very light kind. He was confined to the house for three months, and has constantly suffered much pain. 16. The defendant suffered a default, and the hearing was as to the damages after such default. Upon the foregoing facts the plaintiff claimed that the negligence of said Burns in constructing the staging was imputable to the defendant, and constituted a breach of the duty owed by a master to his servant, and that substantial

damages should be awarded. The defendant claimed that
the negligence of said Burns was the negligence of a servant
of an independent contractor, and was not imputable to the
defendant. The defendant claimed further that the accident
which caused the plaintiff's injuries was one of the risks of
employment assumed by plaintiff ; that if said Burns was
not the servant of an independent contractor, he was a
fellow-servant of the plaintiff, and that therefore defendant
was not liable for his negligence, and that only nominal dam-
ages should be awarded. The court overruled the claims of
the defendant, and rendered judgment for the plaintiff in the
sum of one thousand dollars and costs of suit."

*William Waldo Hyde* and *Arthur L. Shipman*, for the appel-
lant (defendant).

There can be no question but that, on the facts found,
Caulfield was an independent contractor in furnishing the
staging, helper, material, etc., within the definitions laid
down in *Lawrence* v. *Shipman*, 39 Conn. 586, *Burke* v. *Nor-
wich & W. R. Co.*, 34 id. 474, and *Norwalk Gas Light Co.*
v. *Norwalk*, 63 id. 495. Burns was in Caulfield's employ
and was paid by him. We have, therefore, the case of a
contractee's employee, injured through the negligence of a
contractor's servant, and the contractee's servant is attempt-
ing to hold the contractee liable therefor. The test of con-
trol as the proper one may be seen in all the independent
contractor cases when the owner is attempted to be held
liable to third persons, and even in very close questions, of
which *Ziegler* v. *Danbury & N. R. Co.*, 52 Conn. 543, is an
instance, where it was doubtful whether the plaintiff was
the servant of the Danbury & Norwalk or the Shepaug road.
It is the test in the line of cases of which *Johnson* v. *Lindsay*,
L. R. (1891) A. C. 371, *Murray* v. *Currie*, L. R. 6 C. P. 24,
*Rourke* v. *White Moss Colliery Co.*, L. R. 1 C. P. Div. 556,
*Johnson* v. *Boston*, 118 Mass. 114, *Hasty* v. *Sears*, 157 id.
123, are instances, where the servants of one party were for
the time being leased or lent to the defendant in the cause.
See also *Butler* v. *Townsend*, 126 N. Y. 105 ; *Devlin* v. *Smith*,

89 id. 470; *Hardy* v. *Sheddon*, 78 Fed. Rep. 610; *Cameron* v. *Nystrom*, L. R. (1893) H. L. 308; *Currier* v. *Henderson*, 86 Hun, 300. If Burns was not the servant of an independent contractor, he must have been the servant of defendant and, if so, he was the fellow-servant of plaintiff. In the case at bar, Burns did what he did under the direction of the plaintiff. He could not have compelled the plaintiff to go on the scaffold. Under no view of the case can he be regarded as representing the defendant in fixing the small staging. *Butler* v. *Townsend*, 126 N. Y. 111; *O'Connor* v. *Neal*, 153 Mass. 281; *Killea* v. *Faxon*, 125 id. 485. If the plaintiff was lent or hired out by defendant to Caulfield, surely the defendant is not liable for the negligence of Caulfield's servant. *Donovan* v. *Syndicate*, L. R. (1893) Q. B. 629; *Johnson* v. *Lindsay, supra; Delaware, L. & W. R. Co.* v. *Hardy*, 59 N. J. L. 35; *Rourke* v. *White Moss Colliery Co.*, L. R. 2 C. P. Div. 206. The payment of plaintiff's wages by defendant is not conclusive, nor is the fact that defendant charged Caulfield an increased price for the services. *Rourke* v. *White Moss Colliery Co., supra; Murray* v. *Currie*, L. R. 6 C. P. 24; *Johnson* v. *Boston*, 118 Mass. 114; *The Harold*, 21 Fed. Rep. 428. The court below rested its decision upon the theory that the staging was an instrumentality which the defendant was bound at all hazards and at all times to see was safe. This was error. *Butler* v. *Townsend, supra; Hogan* v. *Smith*, 125 N. Y. 774; *McCampbell* v. *Cunard S. S. Co.*, 144 id. 552; *Kimmer* v. *Weber*, 151 id. 417; *Adasken* v. *Gilbert*, 165 Mass. 443.

*Timothy E. Steele*, for the appellee (plaintiff).

It is the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, and reasonably safe appliances and instrumentalities for his work. Wood's Master & Servant, §§ 329, 398; Thompson on Neg. 736. Such duty is a personal duty, the performance of which may be delegated, but the responsibility concerning it remains with the master. *McElligott* v. *Randolph*, 61 Conn. 157, 161; *Wilson* v. *Linen Co.*, 50 id.

433, 457; *Gerrish* v. *New Haven Ice Co.*, 63 id. 9, 16; *O'Keefe* v. *Box Co.*, 66 id. 38, 45. Agents who are charged with the supplying of safe machinery are not fellow-servants with those engaged in operating it. *Wilson* v. *Linen Co.*, *supra; Railroad* v. *Fort*, 17 Wall. 553; *Mann* v. *Mill Co.*, 11 R. I. 152. If the master entrusts this duty to a servant, he makes him to that extent a vice-principal, and not a fellow-servant with the other servants. Tiffany's Persons & Dom. Rel. 492; *Gerrish* v. *New Haven Ice Co.*, 63 Conn. 9; *Sullivan* v. *Railroad Co.*, 62 id. 209. The defendant relies largely in support of his contention upon the cases of *Devlin* v. *Smith*, 89 N. Y. 470, and *Butler* v. *Townsend*, 126 id. 107. These cases, while more or less similar in their facts to the case at bar, were decided upon grounds entirely inconsistent with our Connecticut rules and decisions, and are of little force here.

TORRANCE, J. The decisive question in this case is whether, upon the facts found, it was the duty of the defendant to provide the staging upon which the plaintiff was to do his work in the church building. If it was, there is no error; if it was not, there is. In the discussion of this question it will be assumed that the plaintiff, while doing the work in the church, was and remained, as the finding shows, the servant of the defendant; and further, that the staging furnished to the plaintiff was, as claimed by him, a "place" for the servant to work in, rather than a mere tool or appliance, within the meaning of the rule hereinafter referred to.

The general rule requiring the master to use reasonable care to provide a reasonably safe place for the servant to work in, and performance of that requirement as the full measure of his duty in this respect, is well settled in this State. *Wilson* v. *Willimantic Linen Co.*, 50 Conn. 433; *McElligott* v. *Randolph*, 61 id. 157. This was the rule applied in this case in the trial court, and the important question is whether it was applicable under the facts found.

The first part of the rule above referred to, is usually stated as follows: "It is the master's duty to exercise reasonable care to provide for his servant a reasonably safe

place in which to work." *McElligott* v. *Randolph*, 61 Conn. 157, 161. This, as a general statement of the general rule applicable in most of the cases of this kind, is accurate enough. It is sufficiently accurate as applied to cases like the two hereinbefore cited from our own reports. As thus stated, however, the duty, and the liability arising from a negligent failure to perform it, would appear to rest upon the master at all times and under all circumstances, whenever and wherever his servants may be at work for him; but this clearly is not so. There are cases where the servant may be at work for the master, and yet no such duty or liability rests upon the master. In cases where the servant does his work upon staging, scaffolding, or similar structures, it frequently happens that it is the duty of the servant, by force of his employment, to make such structure reasonably safe for his own use. In such cases the general rule does not apply in favor of such servant. Shearman & Redfield on Neg. (5th ed.) § 195, and cases cited; *McGorty* v. *Southern New Eng. Tel. Co.*, 69 Conn. 635.

Then, again, this general rule is not ordinarily applicable to cases where the master neither has nor assumes possession, use, or control, legal or actual, of the premises or "place" where the servant may be at work. The general rule is based upon such possession, use and control by the master of the premises where he puts his servants at work for him; and, speaking generally, his duty to use due care to make and keep such place reasonably safe flows from and is measured by such possession, use and control. Just as the master's liability for the acts of his servants while engaged in his business is based upon his power to control them, so his duty to provide reasonably safe premises is founded essentially upon his occupation, use and control of such premises. This being the reason of the rule, when the reason does not exist the rule is inapplicable.

If an employer sends his servant to a distant place by rail, to do a piece of work on the premises of B, it would hardly be contended, in the absence of a special agreement to that effect, that the master would be responsible to the servant

for the negligence of the transportation company in failing to carry the servant safely, or for the negligence of B in failing to keep his premises in a reasonably safe condition. In the case supposed, the servant, both while being carried and while at work on B's premises, is at work for his master, and the railroad car and the premises of B are places where he is directed to and does perform work for his master; and yet the master, as master merely, would be under no duty to use reasonable care to make such places reasonably safe. The law in such cases reads no such duty into the contract of hiring.

If the master assumes possession and control of the premises of B with his consent, even temporarily, for the purpose of doing the work there, the result might be different. Such a case might be, under certain circumstances, within the reason of the rule. Ordinarily, however, we think the law reads such a duty on the part of the master towards the servant into the contract of hiring, only with reference to premises used, occupied or controlled by the master. If this were not so the duty and liability of the master would be very burdensome. He would be, in effect, frequently made responsible for the negligence of third parties with reference to premises he had never seen, and about the condition of which he knew and perhaps could know nothing. The merchant would, in effect, be liable to his clerk for the negligence of the customer with respect to the safety of the premises upon which the clerk goes to deliver his master's goods, and the master-plumber or carpenter to his workman for the negligence of the householder upon whose premises he sends the workman simply to make some slight repairs. In all such cases the servant, if injured without fault on his part, by the negligent failure of the owner or occupier of the premises to keep them in a reasonably safe condition, has his remedy against such owner or occupier and, in the absence of some agreement to that effect, has none against the master.

We think the case at bar, upon a proper construction of the finding, falls within this class of cases. Unless it was

the duty of the defendant to furnish the staging in question, the judgment in this case cannot be supported. Such a duty could rest upon the defendant only upon two grounds: (1) because it had specially assumed it in this case; or (2) because the law imposed it upon the defendant as master. We think the facts found fail to show either that the defendant specially assumed, or that the law imposed, any such duty.

If the defendant specially assumed any such duty, that was a fact to be found by the trial court, either expressly or by necessary implication. It is not found expressly, nor by necessary implication. The question, on this part of the case, is, whether if no such duty rested upon the defendant by law, the facts found warrant the conclusion, as matter of law, that it assumed such a duty. The strongest thing in the finding in favor of such a conclusion is the fact that the defendant assured the plaintiff that the staging would be entirely safe; but this fact, taken either alone or with the other facts found, clearly does not warrant any such conclusion as matter of law. The assurance was given at the very time that the defendant told the plaintiff about the strong staging that had been already erected and in use in the building, and at the very time when plaintiff was informed that Caulfield and not the defendant was to "see" to the staging. What the defendant said to the plaintiff, as detailed in the finding, falls far short of an agreement to be responsible for the staging already built, or to be built, by Caulfield or his servants. The most that can be said about the finding upon this point is that it contains evidential facts tending to prove such an agreement; but such facts do not, as matter of law, constitute such an agreement. Taking the finding as a whole, it is quite clear that it does not show that the defendant specially assumed the duty in question. In justice to the trial court we ought to say that its decision is not based upon the ground that the defendant specially assumed any such duty, but upon the ground that such duty was imposed by law upon the defendant as master under the circumstances; and the remaining question is whether this is so.

The facts clearly show that Caulfield was before and at the time the plaintiff went to work in the building, in the exclusive occupation and control of the building, premises, and staging, and so remained till after the plaintiff's injury. The building was in New Britain; the defendant's place of business was in Hartford, where plaintiff worked for the defendant. The agreement between the defendant and Caulfield was, in effect, that the defendant should furnish a skilled workman to place the ornament, and Caulfield would furnish staging and all else. The plaintiff was not informed of the details of this agreement, but this is of no importance on this part of the case. It was important as evidence bearing upon the question whether the defendant specially assumed the duty to furnish staging, but not upon the question whether the law imposed the duty upon the defendant as master. The defendant sent the plaintiff from Hartford to this church building in New Britain, to perform this work. The defendant had never been in possession or control of the premises, even temporarily, up to the time the plaintiff went there. It never was, upon the facts found, in possession or control of these premises at all, in any such sense as to make it responsible to its servant for their safety. The case then, as disclosed by the record, is simply the ordinary one where a master, without more, sends his servant to work upon the premises of B at B's request. In such case, in the absence of agreement to that effect, the law does not impose on the master the duty of caring for the safety of the servant upon B's premises.

There is error in the judgment complained of and the cause is remanded for the assessment of nominal damages.

In this opinion the other judges concurred, except AN-DREWS, C. J., who dissented.