## WORKMAN PLACING MACHINERY IN MINE KILLED BY GAS EXPLOSION.

Circuit Court of Cuyahoga County.

THE WELLMAN, SEAVER, MORGAN COMPANY v. CORA P. WOOD, AS ADMINISTRATRIX OF THE ESTATE OF JERRY L. WOOD, DECEASED.

Decided, December 19, 1910.

*Master and Servant—Negligence—Duty as to Place of Work Under Control of Another—Assumption of Risk.*

1. The rule that an employer is bound to exercise ordinary care to furnish his employee a safe place to work, does not apply when the place is wholly under the control of another.
2. Though the employer knew that such place under the control of another was not a safe place to work, or by the exercise of ordinary care might have known it, under the rule stated in the Norman case the employee can not recover if he also knew the same thing, or, by the exercise of ordinary care, might have known it.

*Hoyt, Dustin, Kelley, McKeehan & Andrews,* for plaintiff in error.

*William Howell* and *N. Sheldon,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The defendant in error brought suit against the plaintiff in error and the Zeigler Coal Company, seeking to recover damages for the death of Jerry L. Wood, which occurred at the mines of said coal company in Illinois on the 3d day of April, 1905. No service of summons was had upon the coal company, and so the case was tried between the defendant in error, as plaintiff, and the plaintiff in error, as defendant; the result being a verdict

in favor of the defendant in error.  The following facts are shown in the case:

The decedent was killed by a gas explosion at the mines of the Zeigler Company in Illinois on the 3d day of April, 1905; he was an employee of the plaintiff in error; his home was in Ohio, and the plaintiff in error is an Ohio corporation engaged in the manufacturing and placing of heavy machinery and engines. In December, 1904, the plaintiff in error, hereinafter spoken of as the defendant, because it was the defendant below, sent a party of workmen, under the superintendence of one Keown, to put in certain machinery at the mines of the said coal company in Illinois.  The decedent, Jerry L. Wood, was one of this party of workmen, and from the time that Keown took the workmen there up to the time of the death of the decedent, he continued in this employment engaged in the work of putting in the machinery at the mines.  Coal mining operations were in progress at the mines during all the time that this work was going on. The coal was mined in chambers many feet below the surface of the earth.  The miners and others having work to do in the mines were conveyed on a hoist or elevator down a shaft leading from the surface to these chambers, and the employees of the defendant were required to go by this same elevator down the shaft to the chambers.  The explosion, resulting in the death of the decedent, occurred, as already said, on the 3d day of April, 1905, which was Monday, and the explosion took place in the morning, just as the workmen, including the decedent, had got on to the elevator platform to go into the shaft, and they were, therefore, at the mouth of the shaft.  This explosion was terrific and resulted not only in the death of the decedent, but in the death and injury to still others and the destruction of the elevator platform.  The ground upon which the defendant in error, hereinafter spoken of as the plaintiff, claims to recover is, that this explosion was the direct result of negligence on the part of the defendant.  It should be said that the plaintiff is the duly appointed, qualified and acting administrator of the estate of the decedent, who left a widow and a child only about fifteen months old at the time of his death.  The result of the trial was a verdict and judgment in favor of the plaintiff.

By proper proceedings the case is here for review upon errors claimed by the defendant to have been committed to its prejudice on the trial, including error in overruling the motion for a new trial which was made after the verdict; one of the grounds of which motion was that the verdict was not sustained by the evidence. Among the errors complained of is that the court erred in admitting certain evidence offered by the plaintiff over the objection of the defendant. These have been examined, and the conclusion reached that there was no error in the admission of such evidence to the prejudice of the defendant. Evidence was introduced tending to show that in this mine gases generated, or at least existed, necessitating the ventilation of the mine by the use of a power fan forcing air into the chambers of the mine through a shaft constructed for that purpose, and that such a fan was used by the coal company for that purpose. That such fan was not operated on the Sunday, the day preceding *the* injury. A witness by the name of C. E. Childers, testified on the part of the plaintiff in a deposition, as also did a witness by the name of Edward Evans. Each of these men had worked at this mine a considerable time before the explosion complained of in this action. Each had discontinued work at this mine some eight or nine months before the explosion. Each was asked as to the condition of the mine in regard to gases and the means of ventilation employed at the mine at the time he worked there, and each was permitted to answer. It is said on the part of the defendant, that the time when these witnesses know and could testify as to the condition of the mine was too remote from the time when the explosion occurred. We are of opinion that it was admissible to show the condition of the mine at the time these men were employed there, as tending to show that it was a dangerous place, when the use of the fan for ventilation was omitted, and the fact that gases existed in this mine. True, it was a good while before the explosion that they knew of this situation. But, if by the operation of the laws of nature gases were generated in the mine and existed there in dangerous quantities at the time these men worked here, it might have a legitimate tendency to show that such gases were generated in the mine at the time of this explosion. The weight to be given to

this evidence was a question for the jury, and so, as already said, we do not find that the court erred in any ruling upon evidence to the prejudice of the defendant.

The plaintiff claims that one of the duties, devolving upon the defendant, in sending the decedent and others to work at this mine was that it should furnish a safe place for its employees to work. The rule which puts this duty ordinarily upon an employer is different when the employee is put to work in a place wholly under the control of the employer, than when the employee is put to work in a place under the control of another; or rather, when the employee is put to work by his employer to do work in the premises of another, which are under the control of such other. This is pointed out in numerous cases to which attention is called in brief of the defendant, such as the case of *Homer Shadel* v. *Illuminating Co.*, 22 C. C. Rep., 49, and authorities noted in that opinion. Among other things this court said in that case, the following:

"There is a difference in the obligation of the employer in the matter of furnishing a suitable place for the employee to work where the work is to be done upon the premises of a third party, and where it is to be done in the shop or factory of the employer."

In the case of *Sharpley* v. *Wright*, 205 Pa. State, 253, it is said:

"It is well settled that an employer is not responsible for an injury sustained by his employee, caused solely by unsafe premises which are owned and controlled by a third person, and where the latter's services are performed. The reason of the rule is that the employer does not use, own or control the premises, and hence is without power to make any change in their condition."

In the case of *Hughes* v. *Malden & Melrose Gaslight Co.*, 168 Mass., 395, it is said:

"The principle underlying this and like decisions is, that the employer can not be justly charged with negligence as to matters over which he has no control."

See also *Channon* v. *The Sanford Company*, 70 Conn., 573. In that case it is said:

"If an employer sends his servant to a distant place by rail to do a piece of work on the premises of B, it would hardly be contended in the absence of a special agreement to that effect that the master would be responsible to the servant for the negligence of the transportation company in failing to carry the servant safely, or for the negligence of B in failing to keep his premises in a reasonably safe condition. In the case supposed the servant, both while being carried and while at work on B's premises, is at work for his master and the railroad car and the premises of B are places where he is directed to and does perform work for his master; and yet the master, as master merely, would be under no duty to use reasonable care to make such places reasonably safe. The law in such cases reads no such duty into the contract of hiring."

To the same effect is the case of *Long, Administrator,* v. *Stephenson Co.,* 73 New Jersey Law, 186; *Hyde* v. *Booth,* 188 Mass., 290, and *Connelly* v. *Faith,* 190 Pa. St., 553.

But, it is said, that notwithstanding this modification of the rule as to the duty of furnishing a safe place for the employee, the master is responsible if he sends his employee to do work in a place which the master knows to be unsafe, or by the exercise of reasonable care should know to be unsafe; and it is said in this case that Keown, the superintendent for the defendant on the work being done at this mine, knew (and hence defendant knew) that it was unsafe to work at this mine when the fan for ventilation was not in operation.

An examination of the record shows that Keown and Wood each knew that this fan was used for ventilating this mine, and each had equal means of knowing the length of time that the fan had been idle. It shows, too, that each had equal means of knowing that there was gas in the mine, for they had together been in the mine or rather the chambers where the mining was done, and so far as appears Keown had never made such a visit to the chambers of the mine except on an occasion when he was accompanied by Wood.

The statute of the state of Illinois was introduced in evidence to show that by law it was required that the mine be inspected from day to day, and a report of such inspection be kept at a convenient place for examination; the place being designated

in the statute; and that these reports, had they been examined, would have shown that the inspection had been neglected for a few days preceding this explosion. But certainly Wood had the same means of knowing what the laws of Illinois were that Keown had. He had the same means of knowing where these inspection reports could be seen. He knew, too, from the fact that on the morning of the explosion he walked with Keown from their boarding house (and they both lived at the same boarding house) to the top of the elevator shaft where the injury happened, whether any inspection had been made by Keown or a report as to this inspection.

We think and hold that the evidence fails to show that Wood had not the same means of knowing of the dangers connected with this explosion that Keown had, and so under the rule announced in *Coal Co.* v. *Norman,* 49 Ohio St., 598, the verdict was not sustained by sufficient evidence.

In that case the court quotes, with approval, Section 414 of *Wood on the Law of Master and Servant,* where it is said:

"The servant in order to recover for defects in the appliances of the business is called upon to establish that the servant did not know of the defect, and had not equal means of knowing with the master."

Whether this be a harsh rule or not, is not a question for us to determine. It has been determined by a court higher than this court, whose decisions this court is bound to follow.

For the same reason that the verdict was not sustained by the evidence, the charge was misleading where the court said (speaking of the decedent):

"If he knew of the existence of the danger which caused his death and proceeded to encounter it, it would be a risk assumed by him, and his representative could not recover unless he had notified his superior, and had encountered the danger relying on the promise to remove it by his employer."

And again where the court said:

"If you find that the company's foreman was negligent and that the deceased was without knowledge of that negligence, nor of the danger to which he was exposing himself, that he would

not have met his death but for that negligence, then under the statute, the decedent's representative, the plaintiff administratrix, would be entitled to recover."

·The first proposition, above quoted, states a proposition of law which is true, to-wit, that if the decedent knew of the danger the plaintiff could not recover, but it implied· that unless he knew, even though he had equal means of knowing with the defendant, still there might be a recovery.

In the last proposition quoted, he distinctly says there may be a recovery, if the decedent did not know.

Both of these propositions should have been qualified with the statement that such recovery was conditioned further upon the proposition that the decedent had not equal means with the defendant of knowing of the danger.

For the reasons pointed out, to-wit, error in the charge as noted, and error in overruling the motion for a new trial on the ground that the verdict was not sustained by sufficient evidence, the case is reversed and remanded to the court of common pleas.