### NORFOLK & W. RY. CO. v. HALL.
No. 3234.

Circuit Court of Appeals, Fourth Circuit.
April 12, 1932.

A. W. Reynolds, of Princeton, W. Va.
(Bernard McClaugherty and Sanders, Crock-
ett, Fox & Sanders, all of Bluefield, W. Va.,
and Albert W. Reynolds, Jr., of Princeton,
W. Va., on the brief), for appellant.

A. J. Lubliner and John Kee, both of Blue-
field, W. Va., for appellee.

Before PARKER, NORTHCOTT, and
SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action at law for personal injuries
was before this court on a prior occasion,
and the opinion of the court, reported at 49
F.(2d) 692, may be referred to for a full
statement of the facts and the issues involved.
Hall was injured by the fall of an iron stan-
chion in a railway storage mail car and
brought suit against the Norfolk & Western
Railway Company and also against the
American Railway Express Company. He
was employed and paid by the express com-
pany as an express messenger, a position
which he had held for more than three years;
but he was furnished by the express com-
pany to the railway company, which reim-

bursed the former for his entire salary. He
was in turn furnished by the railway com-
pany to the United States to assist in the
transportation of the mails. The railway
company also furnished to the United States
a storage mail car to carry mail between Cin-
cinnati, Ohio, and Norfolk, Va. Hall's duties
required him to ride on the car from Blue-
field, W. Va., to Norfolk, taking on and dis-
charging mail, and making the necessary sep-
arations of the mail en route. He obtained
a judgment against both defendants at the
former trial, and both appealed. The former
opinion of this court shows that the plaintiff
then relied upon three matters to support the
judgment. They were (a) that his employ-
ers had failed to exercise ordinary care to
provide him a safe place and safe appliances
with which to work; (b) that they had put
him in charge of dangerous equipment and
had failed to instruct him as to the uses and
dangers thereof; and (c) that his fellow em-
ployees, who had packed the mail car before
it was intrusted to his care, negligently left
the stanchion in an unsafe condition, so that
it fell and injured him.

We reached the conclusion on the former
appeal that the evidence submitted at the
trial was not sufficient to warrant the sub-
mission of the first two issues to the jury;
but that there was evidence from which the
jury might have inferred that the stanchion
had been improperly placed by the fellow
employees of Hall, who loaded the car before
he took charge. The jury had been instruct-
ed, over the objection of the defendants, that
it might base a verdict on the alleged dan-
gerous character of the devices, or on the
failure of the defendants to instruct their
employee. Since it was impossible to deter-
mine whether the verdict was based on one or
both of these untenable grounds, or on the
ground of negligence of fellow servants, the
judgment was reversed and the case was sent
back for a new trial. We said that, if it had
clearly appeared that the verdict of the jury
had been based on the negligence of the men
who stored the car with mail at Cincinnati,
the judgment against the railway company
would have been sustained; but the judg-
ment against the express company would
have been reversed because it was not a com-
mon carrier by railroad, subject to the terms
of the Federal Employers' Liability Act, 45
U. S. C. § 51 (45 USCA § 51), but was still
entitled to rely upon the fellow-servant rule.

When the new trial was had, the case
was dismissed as to the express company on
its motion, at the conclusion of the evidence,

and the jury found a verdict in favor of Hall against the railway company for $25,000. The plaintiff did not appeal from the judgment in favor of the express company, but the railway company appealed from the judgment against it. The former decision of this court, under the settled rule, became the law of the case for the subsequent proceedings in the trial court, unless, by the introduction of new evidence, the situation was changed. Thompson v. Maxwell Land-Grant & Ry. Co., 168 U. S. 451, 18 S. Ct. 121, 42 L. Ed. 539; Empire State-Idaho Min. & Dev. Co. v. Hanley (C. C. A.) 136 F. 99; Snow v. Hazlewood (C. C. A.) 179 F. 182. There was no change affecting the duty of the railway company to instruct the plaintiff, and there was no substantial change with regard to the safety of the mechanical construction and equipment of the car. New testimony by the plaintiff showed two other instances in which such a stanchion in a mail storage car in motion had fallen in the period between December 13, 1927, when such a car was first used on the line of the railway company, and the second trial of the case below on June 29, 1931; but the evidence failed to show that the fall in either case was caused through any defect in the appliance. It indicated, on the contrary, that the stanchion fell because it had not been properly placed in the receptacle provided for it. Moreover, the opinion of the witnesses for the plaintiff who testified that they thought that the equipment was unsafe was based only upon the probability that a rod improperly placed would fall.

The evidence for the defendant, on the other hand, showed that at the time of the former trial on January 28, 1930, 28 cars of the railway company, equipped like the one in which Hall was injured, had travelled 4,920,808 miles without other accident, and that from that date until June 29, 1931, when the second trial took place below, these cars had traveled an additional 1,836,225 miles without accident of any kind. The car was built according to specifications furnished by the Post Office Department of the United States. The specifications did not cover every detail of construction, but expressly called for the kind of equipment with stanchions swinging from swivel joints, to be supported when out of use, by hooks and brackets of the kind used in the car in question. It was the legal duty of the railway company to build the car in accordance with the instructions of the Post Office Department. Congress has declared that all railway common carriers shall transport such mail matter as may be offered for transporta-

tion by the United States, in the manner, under the conditions, and with the service prescribed by the Postmaster General, 39 U. S. C. § 541 (39 USCA § 541); and also that all cars or parts of cars used for the railway mail service shall be of such construction, style, length, and character, and furnished in such manner as shall be required by the Postmaster General, and shall be constructed, fitted up, maintained, heated, lighted, and cleaned by and at the expense of the railroad companies. 39 U. S. C. § 537 (39 USCA § 537). See, also, Regulations of the Postmaster General, Sec. 1272, (24), (27).

In Southern Pac. Co. v. Berkshire, 254 U. S. 415, 418, 41 S. Ct. 162, 163, 65 L. Ed. 335, the Supreme Court held that the installation of railway mail cranes within fourteen inches of passing engines was not negligence on the part of the railway company, as respects its employees, since the placing of the cranes was done by direction of the Post Office Department. Mr. Justice Holmes said: "It equally is impossible to condemn railroads as wrongdoers simply for adopting the device with the conditions imposed by the Post Office Department."

Since there was no substantial change in the evidence at the second trial favorable to the plaintiff as to the character of the equipment of the car, or the need to instruct the plaintiff in its use, it was incumbent upon the trial court to apply the law of the case on these matters as it had been determined on the former appeal. The plaintiff asked the District Judge to submit to the jury the question as to whether the railway company had used due care to provide the plaintiff with a reasonably safe place to work, and with reasonably safe and secure equipment, and also whether the situation was such that due diligence on the part of the railway company required it to instruct the plaintiff as to the use of the equipment. The judge refused to grant these instructions, but granted another instruction offered by the plaintiff in which the jury was told that, if the injury occurred because the employees at Cincinnati had carelessly misplaced one of the rods or stanchions by which, on the following day, the plaintiff, without negligence on his part, was injured in unloading the car, then he was entitled to recover against the railway company unless the danger was known and appreciated by him. But, at the same time, the judge refused to instruct the jury as prayed by the defendant railway company that it had fully complied with its duty to furnish the plaintiff with a reasonably safe

place to work, and that it was only required to use ordinary care to furnish safe cars and safe equipment, and there was a like duty upon the plaintiff to use due care to observe the condition of the equipment while the car was in his charge.

We think that the refusal of these instructions offered by the defendant amounted to prejudicial error. The jury should have been expressly told that there was no legally sufficient evidence to support the charge that the railway company had failed in its duty in respect to the character of the equipment, or the instruction of the plaintiff. The necessity for these rulings was the more clear since some of the plaintiff's witnesses were permitted to express the opinion that the equipment of the car was dangerous. Hence the jury was allowed to speculate on this point, without proper instructions from the court, and the basis of the verdict is left in the same condition of uncertainty as on the first trial. It cannot be determined whether the verdict was based on the finding that the men who packed the car at Cincinnati had done their work negligently and thereby caused the plaintiff's injury, or on the ground that the railway company had failed in the performance of a primary duty to the plaintiff.

Additional light has been recently thrown on the questions involved in this case, which was not available in the District Court or in this court at the time of the presentation of the second appeal. On January 4, 1932, the Supreme Court handed down a decision in Jesse H. Denton v. Yazoo & Mississippi Valley Ry. Co., 284 U. S. 305, 52 S. Ct. 141, 142, 76 L. Ed. ——, and held that a railway company is not responsible for an injury caused by the negligence of a porter in its general service who, at the time of the injury, was engaged in loading a United States mail car under the direction of a United States postal transfer clerk. The court said: "When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former. This rule is elementary and finds support in a large number of decisions."

This decision suggests the question whether the railway company was Hall's master in respect to the work he was doing when he was injured. In our former opinion, we said that, while the evidence on the point was not as explicit as it might be, Hall must be considered a railway employee. The present record is more clear. We gather from it that the express company had no agreement with the United States and no connection with the transportation of storage mail. It had no relationship with the railway company or with Hall in this respect, except that it furnished Hall to the railway company and paid his salary, for which the railway company reimbursed it in full. The railway company had no contract with the United States for the transportation of the mails. It furnished the cars and the men to handle the mail, in conformity with the Act of Congress, 39 U. S. C. § 541 (39 USCA § 541), and the regulations promulgated under its authority. The railway company had no power or authority over Hall in the handling of the mails. He himself testified at the second trial that, during the three years of his employment, he received no directions from the railway company and made no report to it. The United States directed and controlled the men who handled the mail in the railway company's cars under the following regulation of the Postmaster General, which seemed significant to the Supreme Court in Denton v. Yazoo & Miss. Valley R. Co., supra: "Section 1293. * * * 2. Railroad companies shall furnish the men necessary to handle the mails, to load them into and receive them from the doors of railway post office cars, and to load and pile the mails in and unload them from storage and baggage cars, under the direction of the transfer clerk, or clerk in charge of the car, if one is on duty, except as provided in Section 1290. Mails intended for delivery to postal clerk shall never be placed in a postal car unless there is a clerk on duty to receive and care for them."

Transfer clerks are located at railway stations to superintend the loading and unloading of the mail. Clerks in charge ride on the train with the mail. Both are employees of the Post Office Department, and, as such, they supervise and control the express messengers and other men like Hall who are furnished by the railway company to do the work.

These appear to be the facts of the case as now disclosed; and it will expedite matters to announce the rules of law applicable thereto, reserving, however, to the parties to the cause the right to introduce additional evidence bearing on all questions involved, if a new trial shall ensue. Assuming the facts recited to be correct, it follows that the United States and not the railway company was the master of Hall at the time of his injury, and that the former, and not

the latter, owed him the duties pertinent to that relationship. A servant furnished by his general employer to perform a particular service for another under the latter's control is to be dealt with as the servant of the latter and not of the former. The special employer bears, not only the liability to third persons for injuries caused by the servant's negligence, but also the liability to the servant for injuries suffered by him from the neglect to perform the duties owed him by his master. Samuelian v. American Tool & Machine Co., 168 Mass. 12, 46 N. E. 98; Wyman v. Berry, 106 Me. 43, 75 A. 123, 20 Ann. Cas. 439; Thomas v. Great Western Mining Co., 150 Okl. 212, 1 P.(2d) 165; Channon v. Sanford Co., 70 Conn. 573, 40 A. 462, 41 L. R. A. 200, 66 Am. St. Rep. 133; Wolfe v. Mosler Safe Co., 139 App. Div. 848, 124 N. Y. S. 541. This rule applies when the general employer furnishes, not only the servant, but the appliances with which he works, if both are subject to the control of the special employer. Hardy v. Shedden Co. (C. C. A.) 78 F. 610, 37 L. R. A. 33; Woodward Iron Co. v. Limbaugh (C. C. A.) 276 F. 1; Linstead v. Ches. & Ohio Ry. Co., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453; Sacker v. Waddell, 98 Md. 43, 56 A. 399, 103 Am. St. Rep. 374; Coughlan v. Cambridge, 166 Mass. 268, 44 N. E. 218; Scribner's Case, 231 Mass. 133, 120 N. E. 350, 3 A. L. R. 1178; Brown v. Smith, 86 Ga. 274, 12 S. E. 411, 22 Am. St. Rep. 456; Miller v. North Hudson Con. Co., 166 App. Div. 348, 152 N. Y. S. 22; Green v. McMullen, Snare & Triest, 177 App. Div. 771, 164 N. Y. S. 948. Of course, a person who undertakes to furnish appliances for the use of the servant of another, is in duty bound to furnish safe appliances, and he may be liable for injuries to the servant resulting from a failure to perform this duty. In such a case, the obligation to furnish safe and proper appliances and the liability for its neglect does not depend upon the relationship between the furnisher and the servant. 18 R. C. L. 542; D'Almeida v. Boston & Maine R. R., 209 Mass. 81, 95 N. E. 398, Ann. Cas. 1913C, 751. But in the pending case, the equipment was of the precise kind which the railway company was directed by lawful authority to furnish, and it was safe when properly used.

■ It may be added that, even if it be considered that the circumstances were such that a duty to instruct the plaintiff as to the use of the appliances arose, it devolved upon the postal authorities who directed his work. It is certain that Hall did not look to the railway company as his employer, and did not accept any directions or instructions from it. The gravamen of his complaint was that he was sent into a new car so fully packed with mail that he could not see the equipment or familiarize himself with its proper use. But this situation arose, through no fault or neglect of the railway company, in the course of the routine use of the car after it had been furnished by the railway company to the Post Office Department, and was under the latter's control. It is true that the railway company moved the car in railroad transportation and had such control as was necessary for the performance of its functions as a common carrier. But these circumstances did not constitute the plaintiff its employee at the time, nor subject him to its authority. Robinson v. Balt. & Ohio R. Co., 237 U. S. 84, 35 S. Ct. 491, 59 L. Ed. 849; Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 S. Ct. 93, 65 L. Ed. 205.

■ Nor is the railway company responsible for the negligent acts of the men who stored the car with mail at Cincinnati, if it be true, as the present record seems to indicate, that these men like Hall were the employees of the Post Office Department, furnished to it by the railway company in accordance with Regulation 1293 (2). That was the question decided in Denton v. Yazoo & Miss. Valley R. Co., supra.

The judgment of the District Court is reversed.