## BALTIMORE & O. R. CO. v. DENEEN.
### No. 5572.

Circuit Court of Appeals, Fourth Circuit.
May 12, 1947.

John O. Henson, of Martinsburg, W.Va., for appellant.

Clarence E. Martin, Jr., and Clarence E. Martin, both of Martinsburg, W. Va. (Martin & Seibert, of Martinsburg, W.Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This civil action, instituted in a State Court, was removed to the United States District Court for the Northern District of West Virginia. Scott Deneen, plaintiff, sued to recover damages for injuries received when the automobile which he was driving was struck at a public crossing near Hancock, West Virginia, by a train operated by the defendant, Baltimore and Ohio Railroad Company. The jury brought in a verdict for plaintiff in the sum of $3,600, judgment was entered accordingly, and defendant has appealed. Defendant moved for a directed verdict in its favor, for a new trial and for judgment notwithstanding the verdict. These motions were all overruled.

Defendant claimed that there was not sufficient evidence of primary negligence on its part to submit the case to the jury and that plaintiff was guilty of contributory negligence as a matter of law. We think the District Court correctly ruled

against the defendant on both of these contentions. The only questions we must consider deal with the correctness of the instructions given by the District Court to the jury.

The declaration here, in four counts, charged the defendant with negligence: (1) In the operation of the train; (2) in failing to keep the crossing in proper repair; (3) in failing, by engine bell or whistle, to give the warning signals required by statute; and (4) in failing to maintain the crossing-bell in working condition.

At the crossing in question there are four tracks—a spur-line track leading off diagonally from the main tracks and three main-line tracks, running approximately East and West. According to the evidence of the plaintiff, he was proceeding North in his car. He heard the ringing of the crossing-bell, stopped his car and waited until an Eastbound freight train had passed on the middle main-line track and the crossing-bell had ceased to ring. He then started his car when the front wheels of his car were on the first track (mainline Eastbound) he again heard the ringing of the crossing-bell. Thereupon he tried to back his car off the track but a wheel of his car dropped into a hole at the crossing and would not budge. The front of the car was hit by an Eastbound train on the first track and plaintiff, still in the car, was injured.

Without reviewing the evidence in detail, we think the District Court properly left to the jury the question of whether or not the plaintiff was guilty of contributory negligence. We further agree with the District Court that there was sufficient evidence to justify a submission to the jury of the questions of the negligence of the defendant in connection with the bad condition of the railroad crossing and the causal connection of this factor with the plaintiff's injury. See 1931 Code of West Virginia, C. 31, Art. 2, Sec. 13.

We think, however, that there was not sufficient evidence to justify a submission to the jury of the question of any negligence on defendant's part as set out in counts 1 (operation of the train), 3 (failure to give the statutory warning signals by bell or whistle), 4 (failure to maintain the crossing-bell in working condition). Accordingly, the District Court should have given (and should not have refused to give) Defendant's Requested Instruction No. 2, which reads:

"The Court instructs the jury that before you can find a verdict for the plaintiff you must believe from the evidence that the defendant, or its employees, was guilty of some act of negligence charged in the declaration, and the jury is instructed that no evidence has been offered of negligence or improper operation of the railroad train; that no evidence has been offered of the failure to give the statutory signals of the approach of the train, and that no evidence has been offered of the failure to maintain the crossing signal bells in proper working condition, and as to these charges of negligence the jury is instructed that they have not yet been proven in this case, and as to such charges you shall find for the defendant. You are further instructed that it is the duty of the railroad company to maintain the crossing in a reasonable condition of repair where it crosses the tracks of the defendant, and unless you believe from the evidence that the defendant failed to so maintain this crossing, and that this failure was the motivating cause of the accident without which the accident would not have occurred, then you shall find a verdict for the defendant."

The law is well settled that where there is no evidence to sustain certain counts in the declaration as to defendant's negligence, defendant is entitled to an instruction that no recovery can be had on those counts. And failure so to instruct in the instant case was prejudicial error, since it cannot be determined on which count the jury based its verdict against defendant. Wilmington Star Mining Co. v. Fulton, 205 U.S. 60, 27 S.Ct. 412, 51 L.Ed. 708; Atlantic Coast Line R. Co. v. Tiller, 4 Cir., 142 F.2d 718 (reversed on other grounds 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465); United States v. Liss, 2 Cir., 137 F.2d 995; Baltimore & Ohio R. Co. v. Reeves, 6 Cir., 10 F.2d 329.

Apart from the statutory warning signals and the crossing-bell (subsequently

considered), the only evidence of negligence in the operation of the train was its speed, which was stipulated at 55 miles per hour. Such a speed was less than the speed of 60 miles per hour permitted at this point by the railroad rules. Under all the circumstances of the instant case, we do not think the speed of 55 miles per hour constitutes evidence of defendant's negligence. It was so held, as to a similar speed, by our Court, in Kilmer v. Norfolk & Western R. Co., 45 F.2d 532. Modern trains, if they are to maintain their schedules, cannot be expected to slow down at every public crossing.

The trip which started the crossing-bell was 2,180 feet from the crossing. There was no evidence to show either that the crossing-bell did not start ringing when the train passed over the trip or that the crossing-bell did not ring continuously from then until the train struck plaintiff's car. In his argument at the trial, Mr. Martin, counsel, for plaintiff, expressly stated: "And remember, gentlemen, that we don't dispute the fact that the bell was ringing."

The closest question is whether there was sufficient evidence to take to the jury the question of whether the required statutory warning signals were properly given. 1931 Code of West Virginia, C. 31, Art. 2, Sec. 8, provides:

"A bell or steam whistle shall be placed on each locomotive engine, which shall be rung or whistled by the engineer or fireman, at a distance of at least sixty rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such street or highway is reached * * * and the corporation owning or operating the railroad shall be liable to any party injured for all damages sustained by reason of such neglect * * *."

Sixty rods are, of course, nine hundred and ninety feet.

There is no doubt that the locomotive whistle was blown and the locomotive bell was rung. It is not quite so clear from the evidence at just what places, with reference to the distance from the crossing,

these acts took place. Plaintiff testified that he heard the engine whistle blow before the train came in sight, that he looked carefully before starting over the crossing, and that he had an uninterrupted view to the West of 700 feet. He did not testify specifically as to how long it was after he heard the whistle blow before the train came in sight. Aulabaugh, witness for plaintiff, was on the Northern side of the crossing and saw the accident. His testimony was as follows:

"Q. Had you seen the Diesel or heard the Diesel horn, if you did hear the horn—did you hear the Diesel horn? A. I heard it just before it struck him.

"Q. Did you hear it earlier than that, or just the one time? A. Well, it was blowing practically continuous, the way it sounded to me.

"The Court: From how far back, approximately, would you estimate?

"The Witness: Oh, I would say very near the 700 feet, because they always blow for that crossing there."

Aulabaugh's evidence is consistent with the fact that the whistle blew continuously from the time that the train was 700 feet from the crossing. He did not state that the whistle may not also have been previously blown. Mosier, witness for plaintiff, testified that when he first heard the whistle blow, the train was coming around the corner for the tower, a distance of 800 yards from the crossing. He stated further that when he first saw the Diesel, it was 700 feet from the crossing and that from then until the accident, the whistle "kept on blowing." Gene Shives, witness for plaintiff, testified that he was at the Hancock Station (West of the crossing), that he heard the engine blow and when asked: "Was it long after it blew until it reached you, or a short time?" he replied: "Oh, a minute or two, I guess. He always blows when he comes into the block up there."

Fisher (witness for defendant and fireman on the train that injured plaintiff) testified:

"Q. What, if any, crossing signals had been given by No. 8? A. Our crossing signals calls for two long blasts, one short and one long.

"Q. Had that signal been given? A. Yes, sir, he was pulling the whistle when it happened; pulling on the whistle when it happened. * * *

"Q. But I mean whereabouts along the track had the valve been turned for that bell to ring? A. I judge that valve was turned on back there just beyond the waiting room.

"Q. Is there a signal post or a whistle post along the track? A. Yes, sir.

"Q. Is that on your side? A. No, sir, it's on the engineer's side."

The center of the waiting room is over 400 feet from the crossing; the signal post is 1,435 feet West of the crossing. Simmons (witness for defendant, engineer on the train) testified that he first blew his whistle just West of the telegraph office, about 2,000 feet West of the crossing and "I continued blowing my horn until I reached the crossing and at the time I had my automatic bell working."

Under the evidence we think the defendant was entitled to a directed verdict on the first, third and fourth counts and that Defendant's Requested Instruction No. 2 should have been given, leaving the case to be decided by the jury on the questions of the negligence of the defendant as to the condition of the crossing and the contributory negligence of the plaintiff.

Our decision that it was error not to give Defendant's Requested Instruction No. 2 requires brief discussion of another point. Though the declaration stated, as has been indicated, only four counts of negligence, the District Court gave a broad instruction to the effect that even if the crossing-bell operated efficiently and even if the statutory warning signals were properly given, a verdict for plaintiff would be proper if the jury found "Some special danger surrounding this public highway crossing of which the defendant had knowledge or of which it should have known * * *" and also "that the defendant failed to give the plaintiff sufficient warning in view of the situation surrounding this public highway crossing of the approach of its train * * * and as a proximate result of this failure, the plaintiff was struck and injured thereby." This same idea was stressed by the District Court in its memorandum opinion filed with the denial of defendant's motion for judgment notwithstanding the verdict or in the alternative, for a new trial. In this connection, the District Court cited the cases of Pokora v. Wabash R. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049; Arrowwood v. Norfolk & Western Ry. Co., 127 W.Va. 310, 32 S.E.2d 634.

We are quite willing to concede that the West Virginia Statute as to warning signals is of broad application and is a minimum requirement, and that in every case the compliance with this statute, plus the presence of an efficiently operating crossing-bell would not (apart from the question of contributory negligence of the plaintiff) constitute an iron-clad defense to defendant, *under all circumstances*. There well may be situations in which an instruction such as that given above would be eminently proper. We do not think, however, the instant case involved such a situation.

The curvature of the railroad track at the crossing is about two degrees; the evidence showed that it was not regarded by the railroad officials as particularly dangerous. A speed of 60 miles an hour was permitted here under the railroad rules, while the stipulated speed of the train was 55 miles per hour. There is a whistling post 1,435 feet West of the crossing. No witness testified to a visibility to the West at the crossing of less than 700 feet. To cross the three main-line tracks, a car had to proceed only 42 feet, and this distance could be traversed in 6 seconds by a car travelling at the rate of five miles per hour. The trip which starts the crossing-bell was 2,180 feet West of the crossing, so that an interval of 27 seconds would elapse between the time when the bell starts to ring and the time when a train travelling 55 miles per hour would reach the crossing. There was some testimony that the weather was bad at the time of the accident, with poor visibility.

█ On this overall picture we must conclude that there was no room for an instruction that there was sufficient evidence that would justify submission to the jury of the question of whether the railroad

was guilty of negligence in failing to provide adequate facilities which would suit-' ably warn travellers at the crossing of the approach of trains under the conditions obtaining at the time of the accident. Such an instruction, too, would be manifestly inconsistent with Defendant's Requested Instruction No. 2, which, as has been indicated, should have been given. Nor do we find any justification in the Pokora and Arrowwood cases, cited by the District Court, for the general instruction that was given here. Both of those cases involved only the question, in connection with a crossing accident, whether the plaintiff was guilty of contributory negligence as a matter of law.

The judgment of the District Court is reversed and the case is remanded for a new trial consistent with this opinion.

Reversed and remanded.