## BALTIMORE & O. R. CO. v. DENEEN.
### No. 5706.

Circuit Court of Appeals, Fourth Circuit.

May 3, 1948.

John O. Henson and Harry H. Byrer, both of Martinsburg, W.Va., for appellant.

Clarence E. Martin and Clarence E. Martin, Jr., both of Martinsburg, W.Va. (Martin & Seibert, of Martinsburg, W.Va., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Plaintiff, Deneen, was injured when he attempted to drive his automobile across the tracks of the defendant, Baltimore and Ohio Railroad Company, and the automobile was struck by the diesel engine hauling a train of defendant. In the first trial of this case before the United States District Court for the Northern District of West Virginia, plaintiff recovered a judgment against the defendant for $3,600. That judgment was reversed by us, 161 F.2d 674, and the case was remanded to the District Court for a new trial. On the second trial, plaintiff recovered judgment for $7,000, and the defendant has again appealed to us.

In our previous opinion, while we reversed the first judgment on other grounds, we stated, 161 F.2d at page 675:

"Without reviewing the evidence in detail, we think the District Court properly left to the jury the question of whether or not the plaintiff was guilty of contributory negligence. We further agree with the District Court that there was sufficient evidence to justify a submission to the jury of the questions of the negligence of the defendant in connection with the bad condition of the railroad crossing and the causal connection of this factor with the plaintiff's injury. See 1931 Code of West Virginia, c. 31, Art. 2, Sec. 13."

On the second trial, the case was tried on the theory that the plaintiff's claim must be based solely on the defendant's failure to fulfill its statutory duty of keeping the crossing in proper repair and the causal connection of this failure with the injury to plaintiff. Defendant contended that there was not sufficient evidence to take the case to the jury on this theory, and that plaintiff was guilty of contributory negligence as a matter of law. The District Court ruled against the defendant on both these points.

The so-called doctine of "the law of the case" has been frequently stated by us and by many other courts. Thus Circuit Judge Pritchard, speaking for our Court in Coal & Iron Ry. Co. v. Reherd, 4 Cir., 226 F. 441, 442, said:

"This question has been before us many times, and it has been uniformly held that, where the questions involved in a case have been determined by this court, the rule announced thereby becomes the law of the case in subsequent trial thereof. * * *

In view of these decisions, and the further fact that the case was tried a second time on the same pleadings and practically the same evidence, we do not deem it proper to enter into a discussion of the merits of this controversy."

In like manner, in Norfolk & W. R. Co. v. Hall, 4 Cir., 57 F.2d 1004, 1006, Circuit Judge Soper stated:

"The former decision of this court, under the settled rule, became the law of the case for the subsequent proceedings in the trial court, unless, by the introduction of new evidence, the situation was changed."

See, also, the opinion of Circuit Judge Simons, in Carpenter v. Durell, 6 Cir., 90 F.2d 57, 58, 59:

"The doctrine of the law of the case has no application to questions of fact, but is limited to questions of law, and is always applied where the former decision relates to the sufficiency or insufficiency of the evidence. When the case comes up the second time and the evidence is substantially the same, a former decision is conclusive. * * * A determining factor in the application of the doctrine is the substantial similarity of the evidence in the second case with that in the first."

There were, of course, differences between the evidence introduced at the first trial of this case and the evidence at the second trial. The defendant-railroad, at the second trial, introduced more elaborate evidence as to the ringing of the crossing-bell; and some of the witnesses who testified at both trials (possibly with their memories dimmed by the passage of time), were not as positive or as definite at the second trial as they had been at the first. We think, however, that these differences between the evidence at the first trial and the evidence at the second trial, were neither important nor substantial. Accordingly, the judgment below might well be affirmed under the doctrine of the law of the case.

There are, however, two problems before us in the instant case which are close and difficult, namely: (1) whether plaintiff was guilty of contributory negligence as a matter of law; and (2) whether there was sufficient evidence to take the case to the jury as to the negligence of the railroad in connection with the condition of the crossing and its causal effect on the accident. We, therefore, discuss briefly the evidence in these two respects.

First, we consider the question of plaintiff's contributory negligence. A leading West Virginia case in this field is Arrowwood v. Norfolk & W. R. Co., 127 W.Va. 310, 32 S.E.2d 634. Save for the fact that no crossing-bell was there involved, the Arrowwood case is quite similar to the case before us.

From our previous opinion (161 F.2d at page 675) we quote:

"At the crossing in question there are four tracks—a spur-line track leading off diagonally from the main tracks and three main-line tracks, running approximately East and West. According to the evidence of the plaintiff, he was proceeding North in his car. He heard the ringing of the crossing-bell, stopped his car and waited until an Eastbound freight train had passed on the middle main-line track and the crossing-bell had ceased to ring. He then started his car and when the front wheels of his car were on the first track (main-line Eastbound) he again heard the ringing of the crossing-bell. Thereupon he tried to back his car off the track but a wheel of his car dropped into a hole at the crossing and would not budge. The front of the car was hit by an Eastbound train on the first track and plaintiff, still in his car, was injured."

Plaintiff testified: "The bell quit ringing, and I looked both ways on that track to see if there was anything coming, looked to my right, then to my left, and saw nothing." At the first trial, Aulabaugh, an eye-witness of the accident, testified: "He (Deneen) looked up and down the track." On this point, at the second trial, Aulabaugh stated: "Well, it has been almost two years ago. I have forgotten. If I said that at that time, I probably thought it was correct when I said it. I don't remember now." There was some testimony to the effect that the weather, at the time of the accident, was misty and rainy. The accident happened shortly after Noon.

The defendant-railroad introduced testimony (which was not contradicted) showing that before the freight train had passed

far enough East of the crossing to stop the ringing of the crossing-bell, the passenger train had passed over the trip (West of the crossing) which would start the ringing of the bell, so that the crossing-bell could not have stopped ringing. Accordingly, the defendant contends that Deneen's testimony that the bell stopped ringing could not have been physically true; hence, Deneen, in starting over the crossing in his car while the bell was ringing, was guilty of contributory negligence as a matter of law.

■ It is possible, but not probable, that the passing of the passenger-engine over the trip did not start the ringing of the crossing-bell; mechanical contrivances such as the one in question do not always function perfectly. Even if it be conceded that the crossing-bell was ringing when Deneen started across the tracks, he might reasonably have thought that the ringing of the bell was still caused by the freight train which had passed to the East of the crossing. Under the doctrine laid down in the Arrowwood case, supra, we therefore think that the District Judge properly left to the jury the question of whether or not Deneen was guilty of contributory negligence.

■ There was ample evidence to take to the jury the question of whether defendant lived up to its statutory duty to maintain the crossing in proper condition. Clearly this was a dangerous crossing. There were three tracks on a slight curve, the crossing was diagonal and so narrow that only one automobile could use it at a time. Railroad traffic was heavy, with trains passing quite frequently. The best that defendant's witnesses could do was to state that the crossing was in fair condition. There was evidence that the crossing was repaired after the accident.

Aulabaugh, who at the first trial said that the condition of the crossing was "very bad", testified at the second trial that the crossing was "rough" and stated: "I don't remember any bad holes; may have had some little irregularities in it." Plaintiff testified that the crossing was "rough, wavy," and said: "My right wheel seemed to drop in a hole." Murray said the crossing was "bumpy and rough," "full of little holes." W. J. Deneen testified the crossing was "very bad" and "had bad chuckholes." According to Palmer, the crossing was "rough," "Pitted out, as near as I can tell, unevenness across, I don't remember how big the holes was, or how deep." Lucas described the crossing as "rough and bumpy," "It pits out holes," "As far as the size of the holes, and so on, I don't know." Widmeyer described the crossing as "very rough," "rough clear across all three tracks," "chuckholes in it for one thing."

Whether the jury should have been permitted to decide whether the condition of the crossing was causally connected with the accident presents another close question. Plaintiff's testimony that, after he became aware of the approach of the passenger train, he backed his automobile some distance, is corroborated by the physical facts and also by the witness, Mosier. Nor is there any contradiction of plaintiff's evidence that, though the motor of his automobile continued to run, the automobile stopped just before it was struck by the passenger train. Plaintiff testified: "The crossing is diagonal, and when I come back across the last rail, the rail that I was over, my left wheel came over the rail all right, but my right wheel seemed to drop in a hole and stop me right on the rail." And, on cross-examination, he stated: "when the wheel came back to the rail, I felt it drop." Plaintiff further testified positively that his automobile did not go off the side of the crossing.

■ Evidence, quite technical in nature, was introduced by the defendant-railroad in an endeavor to show that, with the plaintiff's car in the position it occupied at the time of the accident, the condition of the crossing did not cause the stopping of the plaintiff's automobile, and thus defendant's negligence in this connection had no causal connection with the accident. The weight to be given to this testimony, with the attendant power to resolve any conflicts here between the evidence of the plaintiff and that of the defendant, was peculiarly in the province of the jury.

Defendant-appellant has brought forward numerous other alleged errors, which, it contends, justify a reversal by us of the

judgment. We find no merit in these contentions.

The basic issues, previously discussed in this opinion, were fairly submitted to the jury, so that its verdict, and the judgment entered thereon, must be affirmed.

Affirmed.